[Civ. No. 4329.   Fourth Dist.   Aug. 3, 1951.]

J. R. COPELAND, Appellant, v. COUNTY OF KERN et al., Respondents.

P. H. McCarthy, Jr., F. Nason O'Hara, Herbert S. Johnson and Oscar F. Catalano for Appellant.

Roy Gargano, County Counsel, for Respondents.

BARNARD, P. J.—This is an action by a taxpayer to enjoin the county and certain of its officers from constructing or expending money in constructing a certain county highway "except in conformity with the law respecting the construction of such highways by counties." The complaint alleged that in constructing this road the defendants have been violating certain statutory and constitutional provisions, and will continue to do so unless restrained. The prayer is for an injunction restraining them (1) from constructing this highway in the manner alleged or from "attempting to circumvent" the statutes requiring this work "to be performed by contract let in the manner and form therein made and provided"; and (2) from constructing said highway or using county funds therefor "so long as persons confined in the Industrial Farm and Road Camp" of said county are used in said work.

The cause was submitted on stipulated facts, including the following: On December 27, 1949, construction of 2½ miles of new county highway was begun under the direction and supervision of the county road commissioner, who had been ordered and directed by the board of supervisors to proceed with this work. It was estimated that the work would cost over $40,000, and over $24,000 had already been spent. The work was being done by using regular maintenance employees of the county, and prisoners in the County Industrial Farm and Road Camp. An average of 20 maintenance employees were so employed as tractor operators, motor graders, truck drivers, compressor operator and powdermen. The board of supervisors did not determine the prevailing rate of per diem wages in this locality for workmen employed on this highway. It had, however, predetermined the prevailing rates of per diem wages for public construction work in this locality, which

rates were higher than the rates paid to the same classifications of workmen employed in this work. The maintenance employees here employed were paid a monthly salary at rates set forth in the county salary ordinance.

In addition, an average of 20 prisoners from the County Industrial Farm and Road Camp were used in this work as laborers and jackhammer operators. These persons were supplied by the superintendent of the camp upon request of the superintendent in charge of the work, and they worked under the supervision of an assistant superintendent of the camp and the direct supervision of a foreman on the job. They were paid 20 cents a day. The board of supervisors had not specifically authorized or directed the employment of these prisoners in this work, and they did not work under the supervision of a person appointed for that purpose by the sheriff. The prisoners were employed under a general resolution of the board of supervisors authorizing the use of such prisoners on "other public works of the county" when their services were not needed "on the projects of said road camp and farm." The amount paid these prisoners was less than the prevailing rate of per diem wages for laborers and jackhammer operators in that locality.

The court found that the stipulated facts were true, and entered a judgment denying "the plaintiff's prayer for injunctive relief." The plaintiff has appealed from that judgment.

It is first contended that the law does not permit the county to use its regular road crews, or prisoners confined in a county road camp, in "constructing" such a highway. It is argued that the sole authority by which respondents could construct this highway is to be found in article 1, chapter 4, division 2 of the Streets and Highways Code; that when the cost of construction exceeds $3,000 this article requires that the work be let on contract to the lowest bidder; that the only alternative is found in section 1075(c), which provides that in counties having a single road commissioner such work may be done by purchasing the materials and having the work done by "day labor"; that "day labor" means labor that is hired and paid for by the day; that the regular road crews are employed on a permanent basis on a monthly salary; that the work of county road camp prisoners is involuntary slave labor and cannot be considered "day labor"; and that it follows that the work as being done is unauthorized and unlawful and should be enjoined. It is further argued that section 1075(c) relates to

the construction of new roads, being the only authority for such work other than having it done by contract, and that the law contemplates the use of regular road crews only on ordinary maintenance work.

■ The provisions of this article of this code are not limited to new construction work, as distinguished from labor and maintenance.

Sections 1070 to 1075 expressly refer to any work upon a county highway, which would include both new construction and maintenance work. The words "day labor" are used not only in 1075(c), but in 1073 and 1074 and their meaning, whatever was intended, applies equally to new construction and maintenance work. These statutes refer to both kinds of work and it seems unreasonable to believe that the Legislature intended that the county should be compelled to let its trained regular road crew sit idly by in order that any new construction should be done by inexperienced and casual "day labor," in the strictest sense of that term. ■ It seems more reasonable to believe that the words "day labor" were there used for the purpose of distinguishing between work done under contract and work by employees hired by the board. This seems more reasonable since these sections do not distinguish between new construction and maintenance work, and since sections 1024 and 1029 of that code, as formerly in force, provided that all road commissioners, county and district, should employ all men, teams and equipment necessary "to do all highway work other than that let by contract," without any limitation that such men be employed by the day only. If it be assumed that the words "day labor" as used in 1075(c) are to be thus strictly construed, the fact remains that all of the provisions of that section are permissive only, as provided in section 16 of that code.

■ It cannot be said that section 1075(c) is the sole statutory authority permitting the county to construct this highway. Whatever was originally intended, such work is now authorized by section 2009, as we interpret that section. Formerly, section 1075 only applied to those counties which had a single road commissioner for all its road districts, as permitted by section 1029, with the duties set forth in section 1024. In 1947, these provisions of sections 1024 and 1029 were repealed, and sections 2006 and 2009 were adopted. The first of these sections requires the appointment of a single road commissioner in each county, and the second reads in part, as follows: "The board shall determine the general policies of the county as to

county highway matters and the same shall be carried out and administered by the road commissioner. The commissioner shall employ such assistants and employees as may be necessary, subject to the approval of the board of supervisors of the salary or other compensation to be paid . . ."

While section 1075 still remains, permitting the work to be done in the several ways there outlined, section 2009 gives to the board of supervisors broad powers with respect to county highway matters and, in referring to the hiring of employees by the county road commissioner, expressly mentions "salary or other compensation to be paid" with the approval of the board. This is sufficient to authorize the county to use its regular road crews in such work and we are able to find no statute which forbids this being done.

What has already been said applies also to the use of prisoners from the county road camp, in the absence of any other provision preventing such use. Such use is expressly authorized by Government Code, section 25359, and sections 273h and 4017 of the Penal Code. ▆▆▆ The appellant further contends in this connection that these code sections, purporting to authorize the working of such prisoners, are void and unconstitutional since section 6, article X of the Constitution provides that the labor of "convicts" shall not be let out by contract to any person or firm, and that "the legislature shall, by law, provide for the working of convicts for the benefit of the State."

It is argued that prior to the adoption of this section of the Constitution the Legislature had full powers over the subject of punishment for crime (*State* v. *McCauley*, 15 Cal. 429) ; that under the principle of *expressio unius, exclusio alterius,* which must be applied, the adoption of this section necessarily took away the power which the Legislature formerly had in this connection, and supplanted it with a "specific power of narrower scope"; that the word "convicts" in section 6 refers to persons convicted of felony and confined in state prisons, and does not include persons convicted of a misdemeanor and confined in county jails or road camps; and that the effect of section 6 is to so limit the power of the Legislature that it may provide only for the working of persons confined in state prisons, and then only when the work is for the benefit of the state itself and not the counties. Appellant's contention, if correct, would apply to the first part of section 6 as well as the latter part, with the unique result that this section, while prohibiting the contracting out of convicts to private persons,

would permit the Legislature to provide for the contracting out of misdemeanants to private parties, but would prohibit any provision for working misdemeanants for the benefit of the public. ▮ It is well settled that the state Constitution is not a grant of power, but is a limitation or restriction on the powers of the Legislature. ▮ Such limitations are to be construed strictly, and are not to be extended to include matters not covered by the language used. (*Collins* v. *Riley*, 24 Cal.2d 912 [152 P.2d 169].) ▮ Whether the narrow interpretation of the words "convicts" and "for the benefit of the State," here contended for, was ever intended may well be questioned. If it be assumed that it was, the entire limitation would relate only to persons confined in the state prisons, and the original power of the Legislature in this regard would otherwise remain in force. In any event, this section of the Constitution in no way limits the power of the Legislature to provide for the working of road camp prisoners in the manner here involved.

The appellant further contends that the law does not permit the county to employ either its regular employees or its prisoners on public work at "less than the prevailing wage rate." It is argued that since this work was "Public work" as defined in section 1720 of the Labor Code, the provisions of sections 1770 and 1771 of that code are applicable, both with respect to regular county employees and county prisoners, and that it follows that the county must pay them the prevailing rate of per diem wages while so engaged.

The respondents argue that these provisions of the Labor Code do not apply to persons employed by a county since article XI, section 5 of the Constitution gives to the board of supervisors full control over the appointment and compensation of county employees, thus removing all power in that regard from the Legislature; that the provisions of the County Civil Service Enabling Law (Gov. Code, §§ 31100-31113) clearly indicate that the provisions of the Labor Code have no application to county employees; and that, in any event, the supervisors fixed the salary of these employees by an amendment to the county salary ordinance on September 26, 1949, which is both a sufficient compliance with section 1770 of the Labor Code and made final by that section. It is further argued that the application of these provisions of the Labor Code to the work done by county prisoners would be contrary to the spirit and purpose of the Prison Farm and Road Camp Law (2 Deering's Gen. Laws, Act 3593), and would destroy its usefulness.

It is unnecessary to here decide the question thus raised. If the prevailing wage provisions of the Labor Code are applicable many questions of fact are involved in determining whether or not they have been complied with. The meager record before us is not sufficient to disclose all of the essential facts. It was stipulated that the board had predetermined the prevailing rates of per diem wages for public construction work in this locality. This may have been properly done, and have become final under section 1770 of the Labor Code. That the rates so established were higher than those here paid would not necessarily be conclusive as shown by several cases in this state where similar questions have been adequately presented and decided. If the supervisors were in error in any respect in fixing or paying the compensation for the work here involved ample remedies were available to anyone injured thereby, and no such drastic remedy as restraining the doing of the work, with its resulting injury to the public, was either necessary or proper. The only judgment entered, and appealed from, is one denying "injunctive relief." Nothing is here presented which requires a reversal of that judgment.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied August 27, 1951, and appellant's petition for a hearing by the Supreme Court was denied October 1, 1951.