[Civ. No. 9620.   Third Dist.   Oct. 30, 1959.]

RALPH BECKWITH, Respondent, v. COUNTY OF
STANISLAUS et al., Appellants.

Frederick W. Reyland, Jr., County Counsel, David G. Dun-
ford, Assistant County Counsel, Clayton M. Ham, Deputy
County Counsel, and Jeremy C. Cook, for Appellants.

Robert D. Carter for Respondent.

Johnson & Stanton, Gardiner Johnson, Thomas Stanton, Jr., and Marshall A. Stanton, as Amici Curiae on behalf of Respondent.

SCHOTTKY, J.—The county of Stanislaus, its board of supervisors, Turlock Irrigation District, and the members of its board of directors have appealed from an order of the superior court granting Ralph Beckwith, a taxpayer of the county, a preliminary injunction enjoining the county and its board of supervisors from paying to the district sums due pursuant to three contracts entered into between the county and the district, by the terms of which the district erected three bridges for the county.

The facts are as follows: In August, 1957, the county of Stanislaus and the Turlock Irrigation District entered into three contracts under the provisions of the Joint Exercise of Powers Act. (Gov. Code, §§ 6500-6513.) The first agreement recited that each of the contracting parties was a public agency within the meaning of the act; that the district was authorized to construct bridges under the provisions of section 22225 et seq. of the Water Code; that the county was empowered to construct bridges under the provisions of section 900 et seq. of the Streets and Highways Code; that the act authorizes two or more public agencies to exercise jointly any power common to the contracting parties; that Seventh Street is a county highway which is intersected by one of the district's canals; that it was the desire and intention of the contracting parties to construct a traffic bridge over the canal; that the district would construct the bridge in accordance with plans approved by the road commissioner of the county; that the district would keep strict accounts of all costs incurred in the construction of the bridge; and that the county would pay the district the net cost of the bridge on completion and acceptance of the bridge. The second and third contracts were similar except that they called for construction of bridges at other points. The construction of the bridges was undertaken by the district, and at the time of the commencement of this action the bridges were substantially completed. No contracts were let in connection with the construction of the bridges. The district employed only its own workmen. While the contracts talk of the construction of bridges, it was agreed

at the time of oral argument before the trial court that what actually was done was the reconstruction of existing bridges.

Ralph Beckwith, a taxpayer of the county, brought an action for declaratory relief by which he sought a declaration of the validity of the contracts. He asked that the contracts be declared void and that an injunction be granted to restrain the county or its board of supervisors from paying the district for the bridges.

The matter was heard upon an agreed statement of facts, and it was stated therein that "Among the purposes for which the TURLOCK IRRIGATION DISTRICT entered into said agreements were to control the time of the work so that the same would not interfere with the use of the canals for irrigation and drainage purposes, and so that the crossings would be constructed in a manner that the completed structure would not interfere with the use of the canals by the district, and to provide steady employment for approximately 20 employees who would have otherwise not had such employment."

The trial court granted a preliminary injunction and this appeal followed. For convenience, the plaintiff and respondent will be called "taxpayer," the defendant and appellant county and its officers will be collectively called "county," and the defendant and appellant district and its officers will be collectively called "district."

The basis of the trial court's decision, as expressed in its memorandum opinion, were (1) that the contracts were illegal because the district had no authority to enter into the contract for the reason that it lacked power to construct bridges across canals at the points where the canals were intersected by county roads under the circumstances presented here (i.e., where the county road crosses an irrigation district canal and where the construction of the bridge constitutes a repair or reconstruction of an existing bridge in the county highway system), and (2) that the county had no authority to enter into the contract because there were only two methods by which the county could build a bridge at a cost in excess of $500, to wit: "1. By the plans, specifications and call for bid procedure, and 2. By authorization by the Board of Supervisors to the County Road Commissioner to build the same on force account."

Appellants' principal contention is that the Joint Exercise of Powers Act provides a method for the construction of bridges and authorizes the agreements here involved. The Joint Exercise of Powers Act provides in section 6502 of the

Government Code: "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the contracting agencies may be located outside this State."

There can be no doubt as to the power of the county to proceed with the construction of the bridges here involved. The board of supervisors is specifically authorized to construct bridges over irrigation ditches. (Sts. & Hy. Code, §§ 1331, 1490.) The board may authorize the road commissioner to employ workmen and purchase materials to construct bridges in the county highways without drawing of plans and specifications or calling for bids. (Sts. & Hy. Code, § 1332.) The same powers are granted with respect to construction or repair of county highways generally. The board may have such work done under the supervision and direction of the county road commissioner by purchasing the material and having the work done by day labor, among other methods. (Sts. & Hy. Code, § 1075, subd. (c), and 2006-2009; *Copeland* v. *County of Kern*, 105 Cal.App.2d 821 [234 P.2d 314].)

Appellants contend that the trial court erred in its conclusion that the district lacked power to construct bridges on county highways over its canals, "*unless* it is shown that the construction of such bridge is under and by virtue of an obligation imposed by law, or reasonably necessary to carry out fully the provisions of Division 1 of the Water Code and where such obligation is not legally imposed upon another." Appellants argue that such a view of the law is contrary to the established principles of statutory construction and unduly restrictive of the purposes for which irrigation districts were organized and are operated. Appellants cite sections 22225 and 22230 of the Water Code, which read:

"Sec. 22225. Each district has the power generally to perform all acts necessary to carry out fully the provisions of this division."

"Sec. 22230. A district may make and perform any necessary contracts to carry out the purposes of the district."

In addition to the general powers hereinbefore mentioned, irrigation districts have authority to acquire property to carry out its purposes. (Wat. Code, § 22425.) And this may be done in cooperation with a county.

"Sec. 23100. A district may make and perform any agreement with the United States, any State, county, district of any kind, public corporation, any person, or any number of

them for the joint acquisition, disposition, or operation of any property of a kind which might be acquired by the district.''

With particular reference to roads, the district has been given additional express powers. Section 22431 provides:

''A district may construct any works across any watercourse, road, railway, conduit, or other property subject or devoted to public use in a manner that will afford security to life and property. The district shall restore the property crossed as near as may be to its former state or so as not to have impaired unnecessarily its usefulness.''

The foregoing provision should be related to the more general law concerning maintenance of canals. Chapter 3, division 4, of the Water Code provides:

''Sec. 7030. No canal, flume, or other appliance for conducting water shall be so laid, constructed, or maintained as to obstruct any public highway.''

''Sec. 7031. Every person who owns, maintains, operates or uses any canal, flume, or appliance for conducting water, crossing or running along any public highway, shall construct, maintain, and keep in repair such bridges as are necessary to the safe and convenient use of the highway by the public.''

The trial court was evidently of the opinion that a statutory scheme of responsibility for erection and maintenance of county bridges over the district canals has been created and that that scheme of responsibility is exclusive. We do not believe it is true that the public agency upon whom the duty may fall to erect or maintain such bridges is the only agency which may have any power to construct or maintain such bridges.

It is just as important to the district as it is to the county that the size, type and state of repair of the bridges in question conform to the needs of the traffic that they will bear and the requirements of the free passage of water at all seasons. Furthermore, in pursuance of the district's purposes, the district had the power, whether or not it had the responsibility, to see to it that these bridges were adequately and conveniently constructed from the point of view of the district. This would include not only the type and size of construction, but the time of the performance of the work.

We believe that in recognition and fulfillment of the needs of both the county and the district these public agencies agreed among themselves upon matters vital to each and apportioned the work and the cost upon terms which appeared just and reasonable to their respective governing bodies. It is to be

presumed that both the board of supervisors of county and the board of directors of district acted reasonably and within the scope of their respective powers. (41 Cal.Jur.2d, Public Officers, § 245, p. 131.)

Respondent cites *City of Madera* v. *Madera Canal & Irr. Co.*, 159 Cal. 749 [115 P. 936], in which it was held that the cost of construction of a bridge across a canal was not to be imposed upon the owner of the canal, nor was the liability for constructing of same, where the canal was in existence before the construction of the road. Respondent argues that because the district may not have the duty to construct or repair the bridge it cannot legally have the power to do so.

We think in any event that it is immaterial which agency may have had the duty to repair or reconstruct the bridges in question. Legislative recognition of the problem of allocating cost is reflected in section 22233 of the Water Code which reads:

"Any district and any county may enter into a contract agreeing to pay and apportion between them the costs of locating, removing, repairing, or relocating any facilities owned or to be owned by either party on the roads or other property of the other in such proportion and upon such terms as the governing boards of the parties shall determine to be equitable."

It is to be borne in mind that the decisions (such as the City of Madera case) have decided only which agency must pay upon the demand of the other, and do not go further and declare which agency cannot voluntarily pay. It is evident that section 22233 was added to provide a means of amicable cooperation in order to avoid the necessity of historical research every time a county bridge over a district canal had to be repaired or reconstructed. This is consistent with the idea of intergovernmental cooperation upon matters of mutual concern and benefit so clearly demonstrated by the enactment of the Joint Exercise of Powers Act.

To strike down the agreements in this case is to negate the express legislative policy permitting cooperation among governmental agencies and to rewrite the Joint Exercise of Powers Act.

■ Respondent argues further in support of the trial court's determination that the county be enjoined from paying the amounts agreed to be paid under the agreement that under the provisions of the Streets and Highways Code the

only two methods by which a county may build a bridge costing more than $500 are: 1. By the plans, specifications and call for bid procedure, and 2. By authorization· by the board of supervisors to the county road commissioner to build the same on force account.

We believe that since both the county and the district had the power to construct the bridges here involved the parties could contract between themselves for the exercise of this common power, pursuant to the Joint Exercise of Powers Act, Government Code, section 6502 of which states that "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties, . . . ."

Section 6506 of the Government Code provides that the agency provided by the agreement to execute it may be one of the parties to the agreement. Section 6508 provides that such agency shall possess the common power specified and may exercise it in the manner provided in the agreement. Section 6509 provides that such power is subject to the restrictions upon the manner of exercising the power of one of the contracting parties, which shall be designated by the agreement. The district is designated by the agreement as the party to construct the bridges.

In the case of *City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168], the cities of Oakland, Berkeley and several other east bay cities entered into a joint powers agreement whereby the city of Berkeley was authorized to conduct a preliminary survey looking to the solution of east bay sewage disposal problems affecting in common the parties to the agreement. Each party was to bear a portion of the cost of the survey. The auditor of the city of Oakland refused to endorse the contract as required by the city charter, raising a number of objections as to its legality. In upholding the contract the Supreme Court said at page 553:

"The contention is made that the joint survey agreement does violence to section 125 and other sections of the Oakland charter calling for competitive bids on public work contracts. We cannot accede to the application of said charter provisions under an agreement such as we have here, in which one of the several contracting cities undertakes to carry on the survey. If the conceivably conflicting charter provisions of all the contracting cities were held to be applicable and relevant, the effect would be to vitiate the statute authorizing joint and cooperative action. In other words, there could only be joint

action under such a theory when the charter provisions of all contracting cities are identical. To state the matter is to reveal its absurdity.''

In the case of *County of Los Angeles* v. *Superior Court,* 17 Cal.2d 707 [112 P.2d 10], the court approved an agreement whereby the city of Los Angeles delegated to the county of Los Angeles the power and duty of collecting city taxes. In that connection, the court said at page 713:

''. . . One governmental agency may properly be so empowered to perform functions for another. Such a joint exercise of powers was upheld in the late case of *City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168].''

*In re City & County of San Francisco,* 191 Cal. 172 [215 P. 549], the court held that the Joint Exercise of Powers Act is an alternative procedure to other methods provided for joint action by law. In that case San Francisco and Alameda counties made an agreement whereby Alameda County would construct a wing on its hospital for the care of San Francisco's tubercular patients, and San Francisco would pay the cost of construction. At the time of the agreement, a specific act (Stats. 1921, p. 1641) provided a procedure whereby groups of cities and counties could jointly care for tubercular patients. The Supreme Court held at page 180:

''. . . The acts before us are separate and distinct and provide different methods for the accomplishment of some of the objects common to both. The subjects treated therein are not wholly identical and the more elaborate machinery provided for the operation of one plan or scheme is not appropriate or necessary for the operation of the other. Neither are the acts coextensive in scope. We think, therefore, that each authorizes the adoption of a plan and procedure independent of the other and that neither one was intended to be exclusive in its operation. . . .''

A somewhat similar situation to the one involved in the instant case was presented and resolved in 11 Opinions California Attorney General (1948) 191. In that case a city desired to contribute to the cost of a dam to be constructed by a soil conservation district outside the city limits. The attorney general observed at pages 191-192:

''However, the difficulty we encountered was that section 874 of that act provided that when the total expenditures for such work exceeded $1,000 the work was required to be done by contract let to the lowest responsible bidder after notice,

and finding no other authority for the city to make contributions from its treasury to another agency to do such work we concluded that said section 874 constituted the measure of the power. In so doing, we overlooked Deering's Act 1801, as amended by Chapter 1045, Statutes of 1947, providing for the joint exercise of powers by public agencies. . . .

. . . . . . . . . . . . . .

"In our opinion, the power of a city council to protect the city from overflow and the power of a Soil Conservation District to control run-off waters are, in the present instance, one and the same. Both are designed to prevent damage from excess waters and this is a power common to both agencies within the meaning and intent of the section above quoted. *In re City & County of San Francisco,* 191 Cal. 172 [215 P. 549]; *City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168].''

We believe that the Joint Exercise of Powers Act is ample authority for the execution by the county and the district of the agreements here involved. Such agreements are in no sense contracts for construction within the meaning of the competitive bidding or prevailing wage laws, but are agreements to exercise a power common to both parties.

Regardless of which public agency the duty might have been imposed upon by law for the reconstruction of these bridges, both parties to the agreements had power to do unilaterally what was actually done. In so doing the district might properly agree to conform to the reasonable requirements of the county concerning the design and manner of construction. The district had the power to protect its work in this manner. Similarly, the county might reimburse the district for its costs of so doing without running afoul of the constitutional prohibition, because the purpose of reconstruction was public in nature and of benefit to the county.

Admittedly, the county at all times had power to perform the reconstruction of these bridges and might well have been under an obligation as great as that of the district to do so. That it exercised this power by agreement with the district is no objection. The prevailing wage and competitive bidding statutes have no application to work undertaken by force account or day labor. Either party might have proceeded by that means, and the agreement of the county and the district that one of them do so does not change the case.

We do not share the apprehension of respondent that upholding these agreements would "open the door, . . ., for

one public agency to enter into the general contracting business to perform public works contracts for another public agency without the requirements of competitive bidding with free enterprise.'' Respondent asks what is to prevent the district's contracting to maintain and construct all county roads and also county buildings, or any other construction activities within the county, without competitive bidding. The answer to this inquiry is simply that in order for the district to join with the county and perform some function under the Joint Exercise of Powers Act the district must be directly concerned with the work to be performed. The district would not be directly concerned with the construction of county roads or other public works unless their construction had a direct effect on the operation of the works or canals of the district.

For the reasons hereinbefore set forth, we believe that the contracts entered into by the Turlock Irrigation District and Stanislaus County were authorized under the Joint Exercise of Powers Act and that the court erred in granting the preliminary injunction enjoining the county from paying to the district the sums due pursuant to said contracts.

The order granting the preliminary injunction is reversed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1959.

---

*Assigned by Chairman of Judicial Council.