[Civ. No. 10401. Third Dist. May 17, 1962.]

COUNTY OF AMADOR, Plaintiff and Respondent, v. LEOTTA M. HUBERTY, as County Auditor, etc., et al., Defendants and Respondents; JACKSON VALLEY IRRIGATION DISTRICT, Intervener and Appellant.

Kronick, Moskovitz & Vanderlaan and Adolph Moskovitz for Intervener and Appellant.

No appearance for Plaintiff and Respondent.

Gard Chisholm, Angelo J. DePaoli, Horace Cecchettini and Schaber & Cecchettini for Defendants and Respondents.

SCHOTTKY, J.—The County of Amador brought this action against Leotta M. Huberty, the county auditor, and Elmer G. Evans, the acting county treasurer, for the purpose of having the legality of a contract between the county and the Jackson Valley Irrigation District determined. The individual defendants had indicated that they had doubts as to the legality of the contract and that they would not issue or pay any warrant under the contract until directed to do so by a judgment of a proper court. After the action was filed the Jackson Valley Irrigation District was permitted to intervene and filed a complaint in intervention in support of the County of Amador. The action was submitted to the court on an agreed statement of facts. The court determined that the agreement was invalid. The Jackson Valley Irrigation District has appealed. For convenience the County of Amador will be referred to as the "county" and the Jackson Valley Irrigation District will be referred to as the "district."

The district is a small irrigation district which is located wholly within Amador County. To provide water for irrigation and other beneficial purposes the district planned the construction of a project known as the "Jackson Creek Project" and entered into a contract with the United States Department of Interior, Bureau of Reclamation, for a construction loan in the maximum amount of $1,327,000. The federal statute under which the loan was to be granted (43 U.S.C.A. § 422d, subd. (b)) requires that the district must acquire the lands and interests in the lands necessary for the project before construction commences and that no part of the federal funds may be used for the acquisition of such lands. The district did not have funds at its disposal for acquiring lands. The county had over two million dollars in a fund called the Amador County Water Development Sinking Fund which could only be used for water development and related purposes within the county.

The district sought assistance from the county and a contract was entered into between the parties. It provided in part:

"This contract, made this 7th day of September, 1960, pursuant to California Government Code sections 6500-6513, between the COUNTY OF AMADOR, hereinafter called 'the County,' a political subdivision of the State of California, and the JACKSON VALLEY IRRIGATION DISTRICT, hereinafter called 'the District,' a public corporation of the State of California.

"Witnesseth:

"Whereas, the County possesses a Water Development Fund in the County Treasury which is dedicated for use by the County or public agencies in the County for the construction or acquisition of works to supply water to areas within the County or any part thereof, as may be determined by the Board of Supervisors of the County; and

"Whereas, the District, which lies entirely within the boundaries of the County, has planned the construction of a project, known as the Jackson Creek Project, to provide water for irrigation and other beneficial purposes in the district, and has entered into a contract with the United States Bureau of Reclamation for a loan in the amount of $1,327,000 to cover the cost of construction of said project; and

"Whereas, said contract with the United States Bureau of Reclamation provides that the District must acquire the lands and interests therein necessary for said project prior to commencing construction thereof, but provides that the loan thereunder shall not be used to acquire any such lands or interests therein; and

"Whereas, the District does not have the funds needed to acquire such lands or interests therein; and

"Whereas, the County and the District have the power, common to both, pursuant respectively to Government Code sections 25690-25698 and Water Code sections 20500 et seq., to provide a water supply for beneficial purposes in the part of the County comprising the District, and it is in the best interests of the County to assist the District to acquire the necessary lands or interests therein required to construct said project by providing the funds needed for such acquisition;

". . . . . . . . . . . .

"2. *Maximum Amount to be Loaned.* The County will loan to the district . . . a sum of money not to exceed One Hundred Thousand Dollars.

"3. *Purpose of Loan.* Any and all money disbursed to the District under this contract shall be used solely for the costs of acquiring, as District property, lands and interests in lands necessary for the project and for any beneficial use of water thereunder. Lands necessary for the dam, reservoir and spillway shall be acquired in fee."

In addition there were detailed provisions for procedures as to disbursement of funds by the county, repayment and

other miscellaneous matters. The contract provided that the agreement would be terminated after the repayment of the loan was completed.

Appellant's first and principal contention is that "THE CONTRACT WAS EXECUTED EXPRESSLY PURSUANT TO THE JOINT EXERCISE OF POWERS ACT, AND IS A VALID EXERCISE OF THE JOINT POWER OF THE PARTIES TO PROVIDE A WATER SUPPLY." Before discussing this contention we shall set forth certain pertinent provisions of the Joint Exercise of Powers Act. (Gov. Code, § 6500 et seq.)

Section 6502: "If authorized by their legislative or other governing bodies, two . . . public agencies [which include counties and public districts—Gov. Code, § 6500] by agreement may jointly exercise any power common to the contracting parties, . . ."

Section 6503: "The agreements shall state the purpose of the agreement or the power to be exercised. They shall provide for the method by which the purpose will be accomplished or the manner in which the power will be exercised."

Section 6504: "The parties to the agreement may provide that . . . (c) advances of public funds be made for the purpose set forth in the agreement, such advances to be repaid as provided in said agreement. The funds may be paid to and disbursed by the agency agreed upon."

Section 6511: "The agreement shall provide for the disposition, division, or distribution of any property acquired as the result of the joint exercise of powers."

Section 6512.1: "If the purpose set forth in the agreement is the acquisition, construction or operation of a revenue-producing facility, the agreement may provide (a) for the repayment or return to the parties of all or any part of any . . . advances made by the parties pursuant to Section 6504 . . . . Payments, repayments or returns pursuant to this section shall be made at the time and in the manner specified in the agreement and may be made at any time on or prior to the rescission or termination of the agreement or the completion of the purpose of the agreement."

Respondents in reply contend most earnestly that the county contract is invalid because it constitutes a loan of money by a county to an irrigation district and that it is not a valid contract under the Joint Exercise of Powers Act. The trial judge in an able and extensive memorandum opinion agreed with these contentions of respondents. We have concluded that the contract entered into by the county and the district

was authorized under the Joint Exercise of Powers Act and that the court erred in decreeing that the contract "is invalid and unenforceable, and the defendants shall not draw any warrants or make any payments to effectuate the loan of money therein provided."

 Under section 25690 of the Government Code the county could acquire and provide a water supply for the inhabitants of the county, and under section 20500 et seq. of the Water Code, particularly section 22075, an irrigation district may do any act necessary to furnish sufficient water in the district for any beneficial use. What each can do individually may be done jointly under the Joint Exercise of Powers Act. One contracting party may delegate to the other the exercise of a power in behalf of both which each, acting independently, could have exercised. (*City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168].)

 It is clear that the parties are purporting to act under the Joint Exercise of Powers Act. (Gov. Code, § 6500 et seq.) They specifically refer to the section as their authority to enter into the contract. The purpose is set forth and the duties of each party detailed. The district was to acquire certain lands and perform certain work, and the county was to advance funds for the acquisition of lands by the district.

The trial court and respondents assert that there is no provision as to the disposition of the property and argue that this shows that the agreement is merely a loan and not a joint exercise of powers. There is no requirement that both of the parties share in the ownership and operation of any project constructed under the Joint Exercise of Powers Act. In the case of *Beckwith* v. *County of Stanislaus,* 175 Cal.App.2d 40 [345 P.2d 363], this court held that an agreement under the Joint Exercise of Powers Act need not provide for joint ownership, operation or control of the property involved. In that case this court reversed the trial court and upheld under the act three agreements between the County of Stanislaus and the Turlock Irrigation District which provided for reconstruction by the district of county bridges over district canals.

To further illustrate the fact that there is no requirement that both parties must share in the disposition of any property acquired as a result of the exercise of a joint power *In re City & County of San Francisco,* 191 Cal. 172 [215 P. 549], is in point. In that case the County of Alameda and

the City and County of San Francisco entered into a contract whereby Alameda agreed to erect additional facilities to its tuberculosis sanatorium to take care of up to 60 patients from San Francisco. It was also agreed that San Francisco would advance to the county a sum of money necessary to completely construct the facilities. The sum so advanced was to be placed in a special fund from which the county could deduct each year during the life of the agreement as an allowance for depreciation 4 per cent of the cost of the facilities. The contract was to continue for a maximum term of 25 years. If the contract were terminated before the 25 years had elapsed, San Francisco was to be repaid the full amount of money advanced, less a depreciation deduction of 4 per cent per year. It was also agreed that the administration and control of the sanatorium would be exclusively in Alameda County. Apparently no specific provision provided for disposition of the building after 25 years. The contract was held valid under the Joint Exercise of Powers Act.

We think the action of the board was clearly authorized by the Joint Exercise of Powers Act, the applicable provisions of which we have hereinbefore set forth. The completion of the work of the district and the furnishing of water to the district will be of great benefit to the county of Amador and add to its assessed value. The loan of the county funds in the instant case constitutes the manner in which the county will participate in the joint exercise of power. Section 6504 of the Government Code, as amended in 1957, authorizes the agreement to provide for "advances of public funds to be made for the purpose set forth in the agreement, such advances to be repaid as provided in said agreement. The funds may be paid to and disbursed by the agency agreed upon." We believe that the action of the board in the instant case was not only within the powers granted by the act but was just one of many situations which the Joint Exercise of Powers Act was enacted to cover. To agree with the contention of respondents and hold that the contract here involved is invalid would, in our opinion, negate the express legislative policy permitting cooperation among government agencies.

Appellant asks this court not only to reverse the judgment but to direct the trial court to enter a judgment holding (1) that the county contract is a valid agreement under the Joint Exercise of Powers Act, (2) that the Amador County Water Development Sinking Fund is available for expenditure by the county thereunder, and (3) that in addition to

complying with the terms of the county contract, the procedure set forth in sections 29700-29749 of the Government Code shall be followed in making payments to the district.

The trial court did not rule on the issues (1) whether the Amador County Water Development Sinking Fund is available for expenditure by the county under the county contract, and (2) whether the procedure set forth in sections 29700-29749 of the Government Code is applicable in making payments to the district pursuant to the contract.

Respondents merely reply that if the contract is held valid these issues should be resubmitted to the court for its decision. Inasmuch as these two issues involve questions of law only and the facts are not in dispute, we can see no reason for resubmitting them to the trial court. ■■■ As stated in *Pacific Sewer Pipe Co.* v. *United States Fidelity etc. Co.,* 185 Cal. 515, 519 [197 P. 332], ". . . Where a case is determined upon an agreed statement of facts which discloses every fact essential to a correct judgment, and the trial court draws an incorrect conclusion therefrom, the correct judgment will be ordered upon a reversal."

It appears from the record in the instant case that Amador County, together with several other mountain counties, commenced an action to preserve and put to use for their own benefit water originating within their boundaries before other areas take it away.

One of these controversies involving Amador County and the East Bay Municipal Utility District terminated in litigation (*County of Calaveras, County of Amador* v. *Harvey O. Banks, Sacramento County Superior Court No. 108556*) which was settled by an agreement between the county and the East Bay Municipal Utility District executed in 1958. Under that agreement Amador County withdrew its objections to the release by the state to East Bay of the priority of certain state applications covering water originating in Amador County in return for certain specified considerations. A principal consideration was the payment to the county by East Bay of the sum of $2,000,000 "for such use by Amador or public agencies, including municipalities, therein for the construction or acquisition of works to supply water to Amador or any part thereof as may be determined by Amador's Board of Supervisors. . . ."

■■■ As hereinbefore stated, the Jackson Valley Irrigation District in order to get the necessary construction loan from the United States Bureau of Reclamation was required to ac-

quire and own the necessary land for the project. The Board of Supervisors of Amador County having control of the fund of $2,000,000, and it being the responsibility of the board to use the funds to supply water to Amador County, or any part thereof, wisely and properly concluded that it was ''in the best interests of the County to assist the District to acquire the necessary lands or interests therein required to construct said project by providing the funds needed for such acquisition.'' The board thereupon authorized the loan of $100,000 by the county to the district for such purpose.

The Amador County Water Development Fund was received for use by Amador County, or public agencies, for the construction or acquisition of works to supply water to Amador County, or any part thereof, as may be determined by the Board of Supervisors of Amador County. The use proposed is within the terms of the contract by which Amador County received the fund.

The contract provides that the district must submit certain information to the county in order to obtain disbursement of loan funds. These requirements must, of course, be complied with before money is paid out. However, this does not make inapplicable the general claims procedure set forth in sections 29700-29749 of the Government Code, and the procedure set forth in said sections are applicable in making payments to the district pursuant to the contract.

For the reasons hereinbefore set forth, the judgment is reversed with directions to the trial court to enter a judgment decreeing (1) that the contract is a valid agreement under the Joint Exercise of Powers Act, (2) that the Amador County Water Development Sinking Fund is available for expenditure by the county thereunder, and (3) that in addition to complying with the terms of the county contract, the procedure set forth in sections 29700-29749 of the Government Code shall be followed in making payments to the district.

Peek, P. J., and Pierce, J., concurred.