BILL LOCKYER Attorney General ANTHONY M. SUMMERS Deputy Attorney General
THE HONORABLE DEBORAH V. ORTIZ, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:
1. May Cooperative Personnel Services perform examination, training, and management consulting services for its members and non-members with respect to the employment of personnel?
2. May Cooperative Personnel Services perform examination and related services for state agencies with respect to the issuance of professional and vocational licenses?
 CONCLUSIONS
1. Cooperative Personnel Services may perform examination, training, and management consulting services for its members and non-members with respect to the employment of personnel.
2. Cooperative Personnel Services may not perform examination and related services for state agencies with respect to the issuance of professional or vocational licenses.
 ANALYSIS
Cooperative Personnel Services ("CPS") is a joint powers agency whose members are the California State Personnel Board ("Board"), the County of Sacramento ("Sacramento"), the County of Sonoma ("Sonoma"), the City and County of San Francisco ("San Francisco"), the City of Anaheim ("Anaheim"), the Hayward Unified School District ("Hayward"), and the East Bay Municipal Utility District ("East Bay").
The two questions presented for resolution concern whether CPS has the authority to perform examination, training, and management consulting services for its members and non-members with respect to the employment of personnel and whether it may perform examination and related services for state agencies with respect to the issuance of professional and vocational licenses. We conclude that it has the power to perform the personnel functions but not the state licensing functions.
Preliminarily, we note that the Legislature has enacted a comprehensive statutory scheme, the Joint Exercise of Powers Act (Gov. Code, §§6500-6599; "Act"),[1] governing the establishment and conduct of joint powers agencies. The Act embodies "the idea of intergovernmental cooperation upon matters of mutual concern and benefit." (Beckwith v. County of Stanislaus (1959) 175 Cal.App.2d 40,45.)
The key statute requiring our examination is section 6502, which provides:
 "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the contracting agencies may be located outside this state.
 "It shall not be necessary that any power common to the contracting parties be exercisable by each such contracting party with respect to the geographical area in which such power is to be jointly exercised. . . ."
In The City of Oakland v. Williams (1940) 15 Cal.2d 542, 549, the Supreme Court analyzed the Act as follows:
 ". . . The statute means nothing if it does not mean that cities may contract in effect to delegate to one of their number the exercise of a power of the performance of an act in behalf of all of them, and which each independently could have exercised or performed. A statute thus authorizing the joint exercise of powers separately possessed by municipalities cannot be said to enlarge upon the charter provisions of said municipalities. It grants no new powers but merely sets up a new procedure for the exercise of existing powers."
We have followed Williams in a long line of opinions involving various factual situations, declaring that each member of a joint powers agency must be able to independently exercise the power which is exercised by the joint powers agency. (See, e.g., 81 Ops.Cal.Atty.Gen. 362, 363 (1998); 81 Ops.Cal.Atty.Gen. 213, 213-214 (1998); 71 Ops.Cal.Atty.Gen. 266, 267 (1988); 66 Ops.Cal.Atty.Gen. 183, 185 (1983); 60 Ops.Cal.Atty.Gen. 206, 207 (1977); 60 Ops.Cal.Atty.Gen. 148, 149-151 (1977); 50 Ops.Cal.Atty.Gen. 1, 1-2 (1967); 33 Ops.Cal.Atty.Gen. 156, 156-157 (1959); 30 Ops.Cal.Atty.Gen. 73, 74 (1957).)[2]
1. Employment of Personnel
The first inquiry concerns the authority of CPS to perform examination, training, and management consulting services for its members and non-members regarding the employment of personnel. It is evident that each of the members of CPS independently has the power to hire and manage personnel. (See Cal. Const., art. XI, § 4, subd. (f) [Sacramento], § 5, subd. (b) [Anaheim, San Francisco]; §§ 18500,18930-18940 [Board]; §§ 31100-31117 [Sonoma]; Ed. Code, §§ 45272-45273, 44660-44665,44830-44929.29 [Hayward]; Pub. Util. Code, §§12051-12055, 12101 [East Bay].) As incidental to this general power, each may recruit, examine, train, supervise, and evaluate its employees.
Accordingly, CPS may perform the activities in question for its members as authorized by the joint powers agreement specifying its duties and functions. Each CPS member will benefit from the knowledge and expertise developed by CPS in performing these employment services. (See 75 Ops.Cal.Atty.Gen. 6, 10 (1992).)
As for the performance of employment related services for non-members, we may assume that any non-member seeking employment services from CPS will have independently the power to hire and manage personnel and the incidental powers to recruit, examine, train, supervise, and evaluate its employees. Hence, each would have the same "common power" exercised by CPS pursuant to the contract. Clearly the Act authorizes a joint powers agency to enter into contracts (§ 6508), and here the contract may be executed without the non-member becoming a member or the creation of another joint powers agency as an independent entity.
In answer to the first question, therefore, we conclude that CPS may perform examination, training, and management consulting services for its members and non-members with respect to the employment of personnel.
2. State Professional and Vocational Licenses
The second inquiry concerns the authority of CPS to perform examination and related services for state agencies that issue professional and vocational licenses. For example, may CPS assist the Board of Chiropractic Examiners (see Bus. Prof. Code, §§1000-1004), the Acupuncture Examining Committee (see Bus. Prof. Code, § 4983), and the Department of Health Care Services (See Health Saf. Code, §114870) in the issuance of licenses to chiropractors, acupuncturists, and radiology technicians? Such services would include formulating test questions, administering examinations, and scoring the results.
It is readily apparent that each of the members of CPS does not have independently the power to issue state professional or vocational licenses or perform the incidental or implied powers of examining or evaluating the applicants for state licenses. Nothing similar to the hiring and management of employees, with the performance of incidental powers, may be found in the Constitution or statutes for each CPS member with respect to the issuance of state professional and vocational licenses. Indeed, local governments are preempted from exercising authority over licenses issued by the state. (See Bus. Prof. Code, § 460; Maloy v. Municipal Court (1965)226 Cal.App.2d 414, 418.)
We recognize that formulating test questions, administering examinations, and scoring the results for state licensing agencies encompass the same type of activity as formulating test questions, administering examinations, and scoring the results with respect to the employment of personnel. If CPS can do the one, why not the other?
The answer to that question rests with the Legislature. The "common power," whether expressed or implied, is present regarding the employment of personnel, but not with respect to the issuance of state professional and vocational licenses. We simply see a difference between hiring and evaluating public employees and issuing licenses to such professionals as chiropractors, acupuncturists, and radiology technicians. Should the Legislature determine that CPS may assist in the latter activities, it can easily so provide.
Accordingly, regardless of whether the state licensing agencies may be authorized to contract for the services in question, they may not contract with CPS in violation of the Act. The CPS members would not be benefited from CPS's performance of the services, since the services would not relate to the duties and functions of each member. (See Beckwith v. County of Stanislaus, supra, 175 Cal.App.2d at 49.) There is no general power held by each CPS member that would allow an implied power to be incidentally exercised.
Finally, it has been urged that section 6514.5 constitutes independent authority for CPS to contract with state agencies to perform services with respect to the issuance of professional and vocations licenses. Section 6514.5 states: "Any public agency may enter into agreements with other state agencies pursuant to the provisions of Section 11256." Section 11256, in turn, provides:
 "Subject to approval of the Director of General Services, state agencies may furnish services, materials or equipment to, or perform work for, other state agencies upon such terms and conditions and for such considerations as they may determine and, subject to such approval, may enter into agreements for such purposes. The state agency furnishing or performing said work, services, materials or equipment as may be approved by the Director of General Services, and such state agency shall compute said charges in a manner approved by the Director of Finance.
 "The Director of General Services, upon such terms and conditions as he may prescribe, may except from his approval, or grant blanket approval for, the performance of any work, the furnishing of any services, materials or equipment, the entering into of any agreements, the computation of any charges, or the inclusion of any costs provided for herein."
We believe that the language of section 6514.5 is ambiguous. "Public agency" for purposes of the Act is defined in section 6500
as follows:
 "As used in this article, `public agency' includes, but is not limited to, the federal government or any federal department or agency, a county, county board of education, county superintendent of schools, city, public corporation, public district, or regional transportation commission of this state or another state."
Many of the public agencies listed in section 6500 are not "state agencies," yet section 6514.5 suggests the contrary by its reference to "other" state agencies. Moreover, section 11256
appears to be strictly limited to state agencies, and an agency comprised solely of local governments such as cities, for example, would not ordinarily be considered a "state" agency. Does section 6514.5
apply to every joint powers agency? If so, are the members nevertheless required to have a "common power"?
We have examined in detail the legislative history of section6514.5, which was enacted in 1983. (Stats. 1983, ch. 729, § 1.) From the committee reports it appears that the Legislature intended to include at least those joint powers agencies having one or more state agency members, such as CPS, as "public agencies" authorized to contract with "other" state agencies.[3] It is clear that the legislation was not intended to change the basic requirement of the Act that each member of a joint powers agency must have a "common power" being exercised by the joint powers agency. Nothing in the legislative history remotely suggests otherwise. Section 6514.5 was enacted due to a "claim that current law is ambiguous as to whether a joint powers agency may contract to furnish services and materials to a state agency." (Sen. Com. on Governmental Organization, Analysis of Assem. Bill No. 2019 as introduced.) In the Enrolled Bill Report of the State and Consumer Services Agency dated August 30, 1983, it is stated:
 "Since express law does exist which authorizes state agencies to enter into interagency agreements, it may be argued that joint power agencies are precluded from contracting with other state agencies for the purpose of furnishing goods or services, absent express statutory authority."
No inference may thus be drawn that the "common power" requirement of the Act is abrogated when a joint powers agency enters into an agreement pursuant to the terms of section 6514.5. The statute does not authorize a joint powers agency to perform any and all services or furnish products without limitation simply because the recipient is a state agency.
In answer to the second question, therefore, we conclude that CPS may not perform examination and related services for state agencies with respect to the issuance of professional and vocational licenses.
[1] All references to the Government Code hereafter will be by section number only.
[2] The Act does in fact grant "new powers" in the limited area of the issuance of bonds. (81 Ops.Cal.Atty.Gen., supra, at 363; 81 Ops.Cal.Atty.Gen., supra, at 214; 50 Ops.Cal.Atty.Gen., supra, at 1-2.) The two questions presented do not involve the authority of CPS to issue bonds.
[3] The joint powers agency that sponsored the legislation was comprised of California, Arizona, and Nevada state agencies.