BILL LOCKYER Attorney General ANTHONY M. SUMMERS Deputy Attorney General
THE HONORABLE JAMES C. BRAZELTON, DISTRICT ATTORNEY OF STANISLAUS COUNTY, has requested an opinion on the following questions:
1. May two public entities and a mutual water company enter into a joint powers agreement to form a public financing authority for the purpose of issuing bonds under the Marks-Roos Local Bond Pooling Act of 1985?
2. If so, may the project funded by the bonds be located outside the jurisdiction of either of the two public entities?
 CONCLUSIONS
1. Two public entities and a mutual water company may enter into a joint powers agreement to form a public financing authority for the purpose of issuing bonds under the Marks-Roos Local Bond Pooling Act of 1985 to finance the construction of projects authorized by the Joint Exercise of Powers Act over which the contracting parties exercise their common power.
2. The project funded by the bonds may be located outside the jurisdiction of either of the two public entities only if specified conditions are met.
 ANALYSIS
We are informed that two cities in Northern California propose entering into a joint powers agreement with a mutual water company located in Southern California for the purpose of financing a project in the area served by the private water company. The two questions presented for analysis concern whether the proposal would be authorized under California law.
1. Issuance of Bonds
The Joint Exercise of Powers Act (Gov. Code, §§ 6500-6599; "Act")[1] authorizes two or more public entities to enter into an agreement to exercise jointly any power common to them. (§6502; 81 Ops.Cal.Atty.Gen. 362 (1998).) As a general rule, only public entities may form a joint powers agency. (81 Ops.Cal.Atty.Gen. 213 (1998).)
A mutual water company is not a public entity but rather is a private corporation or association. Section 2725 of the Public Utilities Code defines a mutual water company as "any private corporation or association organized for the purposes of delivering water to its stockholders and members at cost, including use of works for conserving, treating and reclaiming water." Nevertheless, the Act specifically authorizes mutual water companies to become members of joint powers agencies under certain circumstances. Section 6525 provides:
 "Notwithstanding any other provision of this chapter, a mutual water company may enter into a joint powers agreement with any public agency for the purpose of jointly exercising any power common to the contracting parties."
For example, a mutual water company may enter into a joint powers agreement with a public agency having similar powers in order to carry out one or more of the purposes identified in Public Utilities Code section 2725 (Cf. City of Oakland v. Williams (1940)15 Cal.2d 542 [contiguous cities forming joint powers agency for sewage disposal]; Amador County v. Huberty (1962) 203 Cal.App.2d 664 [county lending funds to irrigation district to acquire land for irrigation project].) Conversely, a mutual water company may not join with a public agency to perform a function under the Act unless the mutual water company is "directly concerned" with the function to be performed. (Beckwith v. County of Stanislaus (1959) 175 Cal.App.2d 40, 49
[irrigation district may only join with a county to exercise joint powers if the district is directly concerned with the work to be performed].)
A joint powers agreement may form a public financing authority as an entity separate from the parties to the agreement. (§ 6503.5; Rider v. City of San Diego (1998)18 Cal.4th 1035, 1050-1054.) The financing authority may issue bonds, and the bonds may be "revenue bonds" (§§ 6546-6547) or bonds issued under the Marks-Roos Local Bond Pooling Act of 1985 (§§ 6584-6599; "Marks-Roos"). (Rider v. City of San Diego, supra, 18 Cal.4th at 1040, 1051; 81 Ops.Cal.Atty.Gen., supra, at 363.)
In answer to the first question, therefore, we conclude that two public entities and a mutual water company may enter into a joint powers agreement to form a public financing authority for the purpose of issuing bonds under Marks-Roos. The bonds may finance the construction of projects authorized by the Act over which the contracting parties exercise their common power.
2. Location of Projects
The second question presented concerns the location of the proposed project to be funded by issuance of the Marks-Roos bonds.[2] In 1998, the Legislature enacted sections 6586 and 6586.5 as part of Marks-Roos. (Stats. 1998, ch. 35, §§ 1, 2.) Section 6586
provides:
 "It is the Legislature's intent that this article be used to assist local agencies in financing public capital improvements, working capital, liability and other insurance needs, or projects whenever there are significant public benefits for taking that action. For the purposes of this article, `significant public benefits' means any of the following benefits to the citizens of the local agency:
 "(a) Demonstrable savings in effective interest rate, bond preparation, bond underwriting, or bond issuance costs.
 "(b) Significant reductions in effective user charges levied by a local agency.
 "(c) Employment benefits from undertaking the project in a timely fashion.
 "(d) More efficient delivery of local agency services to residential and commercial development."
Section 6586.5 states:
 "(a) An authority may not issue bonds to construct, acquire, or finance a public capital improvement pursuant to this article unless both of the following conditions are satisfied with respect to each capital improvement to be constructed, acquired, or financed:
 "(1) It reasonably expects on the date of issuance of the bonds that the public capital improvement is to be located within the geographic boundaries of one or more members of the authority that is not itself an authority.
 "(2) A member of the authority within whose boundaries the public capital improvement is to be located has approved the financing of the public capital improvement and made a finding of significant public benefit in accordance with the criteria specified in Section 6586 after a public hearing held by that party within each county or city and county where the public capital improvement is to be located after notice of the hearing is published once at least five days prior to the hearing in a newspaper of general circulation in each affected county or city and county.
 "(b) This section shall not apply to bonds issued for any of the following purposes:
 "(1) To finance the undergrounding of utility and communication lines.
 "(2) To finance, consistent with the provisions of this chapter, facilities for the generation or transmission of electrical energy for public or private uses and all rights, properties, and improvements necessary therefor, including fuel and water facilities and resources.
 "(3) To finance facilities for the production, storage, transmission, or treatment of water, recycled water, or wastewater.
"(4) To finance public school facilities.
 "(5) To finance public highways located within the jurisdiction of an authority that is authorized to exercise the powers specified in Chapter 5 (commencing with Section 31100) of Division 17 Sts. High. of the Streets and Highways Code, provided that the authority conducts the noticed public hearing and makes the finding of significant public benefit in accordance with this section."
In examining these two statutes, we note first that no geographic limitation applies to projects listed in subdivision (b) of section6586.5. For example, if the proposed project is "for the production, storage, transmission, or treatment of water, recycled water, or wastewater" (§ 6586.5, subd. (b)(3)), the project may be located outside the boundary of any of the member entities.[3]
If the proposed project would not qualify under subdivision (b) of section 6586.5, the requirements of subdivision (a) must be considered. Here we find applicable several rules of statutory interpretation. The guiding principle of statutory construction is to "`ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" (Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222,230.) In ascertaining legislative intent, we turn first to the language used (Tracy v. Municipal Court (1978) 22 Cal.3d 760, 764), giving the words their ordinary meanings (People v. Belleci (1979) 24 Cal.3d 879,884). "Words must be construed in context . . . both internally and with each other to the extent possible." (California Mfgrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844.) "Committee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997)14 Cal.4th 627, 646.) Finally, interpretive constructions that defy common sense or lead to mischief or absurdity are to be avoided. (Fields v. Eu (1976) 18 Cal.3d 322, 328.)
May a mutual water company meet the requisites of section 6586.5, subdivision (a)(2), which obligate the public financing authority member within whose boundaries the project is located to make a finding of "significant public benefit" after holding an appropriately noticed public hearing? The process of holding public hearings and making findings of public benefit is something normally undertaken only by public agencies, not private corporations. (See, e.g., Code Civ. Proc., §§1245.320, 1245.330, , 1245.340.) Did the Legislature intend to allow private entities to make such findings here?
Looking at the legislative history of section 6586.5, we observe numerous references in the committee reports to the purposes of the proposed legislation. For example, the analysis prepared by the Assembly Committee on Local Government for its hearing of March 25, 1998, stated:
 "According to the sponsor, the State Treasurer's California Debt and Investment Advisory Commission (CDIAC), several instances of abuse have occurred since the enactment of the Bond Pooling Act. Specifically, CDIAC found that some Marks-Roos authorities finance land development improvements, such as casinos and golf courses, outside their member agencies' jurisdictions in order to collect fees. These types of financing arrangements are called `land-based' bond deals.
 "In some cases these joint powers authorities (JPA) are financing wholly private projects where the project is not located within the boundaries of any of the agencies in the JPA.
 "A 1995 CDIAC report recommended limiting Marks-Roos authority fees to the costs of issuing and administering bonds. A 1996 informal
 Attorney General's opinion found that current law already limits an authority's fees to the administrative and other costs actually incurred by the authority.
 "This bill establishes a requirement for a geographical nexus between Marks-Roos public financing authorities and the projects they finance. According to the sponsors, without a geographic connection there is not adequate oversight over the project or its financing. The sponsors of this bill assert that by requiring a project to be located within the boundaries of an agency within the JPA there will be more public accountability for `land-based' bond deals.
 "The sponsor further argues that the agency which receives the benefit of bonds should be involved in the decision to issue the bond. According to the same Attorney General opinion mentioned above, the agency whose project is to be financed must make a finding of public benefit prior to the sale of the bonds. This bill requires that before a bond issuance occurs, there shall first be notice and public hearing to determine whether or not there is a significant public benefit.
 "The exceptions for public utilities address the need to allow power and water agencies to finance distant projects to provide their services. The schools exception was designed to avoid hindrances on schools facilities financing. Under both exceptions, the sponsor states there is small likelihood for abuse because these agencies typically do not do `land based' bond financing." (Assem. Com. on Local Gov., Analysis of Sen. Bill No. 147 (1997-1998 Reg. Sess.) as amended Mar. 19, 1998.)
It is readily apparent from the legislative history of section 6586.5
that the Legislature intended to limit the use of Marks-Roos bonds to the funding of projects within the jurisdiction of a public entity able to make the necessary determination of a significant public benefit. Nothing in the legislative history indicates an intention to delegate that responsibility to a private corporation.
Even though a mutual water company may be "a party to the agreement" (§ 6585, subd. (f)), we do not believe that it has the necessary power to hold public hearings and make findings of significant public benefit. A mutual water company does not have general governmental powers, but only those specified in the Public Utilities Code. (Pub. Util. Code, § 2729) Given the Legislature's concern with past abuses in the issuance of bonds by a public financing authority, we believe that the necessary determination designed to protect the public interest must be made by a public entity.
Consequently, we conclude that a project may be constructed outside the jurisdiction of the public entity members of a joint powers agency only under the conditions specified in subdivision (b) of section 6586.5.
[1] All references to the Government Code hereafter will be by section number only.
[2] We do not have sufficient facts to determine whether the proposed project would be one over which the parties would have a common power. We will assume the existence of a common power held by the parties for purposes of this question.
[3] A mutual water company does not have a "boundary" in the sense of a geographic area over which it exercises jurisdiction. Water companies have "service areas" which may be defined by their articles of incorporation (see Pub. Util. Code, § 2710) or in a statement filed with the Public Utilities Commission (Pub. Util. Code, § 2709). A mutual water company may be a corporation or a private association governed by a constitution, bylaws, or rules which may set forth the area to be served. (See Pub. Util Code, §§2725, 2728.) For purposes of this opinion, we will assume that if subdivision (a) of section 6586.5 were otherwise applicable, the geographic boundaries referred to in the subdivision would be the mutual water company's service area.