[S. F. No. 22677. In Bank. Oct. 30, 1969.]

CHARLES BISHOP, Plaintiff and Appellant, v. CITY OF SAN JOSE et al., Defendants and Respondents.

## COUNSEL

Morgan, Beauzay & Hammer, Morgan, Beauzay, Wylie, Ferrari & Leahy, Robert Morgan, Kraft & Kraft and Eleanor M. Kraft for Plaintiff and Appellant.

Brundage & Hackler, Daniel Feins, Charles P. Scully and Donald C. Carroll as Amici Curiae on behalf of Plaintiff and Appellant.

Ferdinand P. Palla, City Attorney, Richard K. Karren, Assistant City Attorney, and Harry Kevorkian, Deputy City Attorney, for Defendants and Respondents.

John D. Maharg, County Counsel (Los Angeles), Edward H. Gaylord, Assistant County Counsel, Leonard Putnam, City Attorney (Long Beach), Charles E. Greenberg, Deputy City Attorney, Rutan & Tucker, Harry J. Keaton, James E. Erickson, J. Nicholas Counter III, E. K. Davis, David S. Kaplan, John B. Reilley, Frank E. Howard and Wayne N. Witchez as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BURKE, J.**—Plaintiff appeals from a judgment declaring the prevailing wage provisions found in certain sections of the Labor Code to be inapplicable to the employees of defendant city, and denying relief sought by way of injunction and damages.[1] As hereinafter appears, we have concluded that the trial court ruled correctly with respect to the prevailing wage law, that no other ground for reversal has been shown, and that the judgment should be affirmed.

---

[1]Plaintiff instituted this action as a resident and taxpayer of defendant city, as the business agent of a labor union local, and as the assignee of certain union members employed by the city as electricians.

Plaintiff contends that from 1958 to 1966 defendant city unlawfully failed to pay its electricians the prevailing rate of per diem wages for work of a similar character, pursuant to the prevailing wage law (Lab. Code, § 1770 et seq.), and also failed to seek competitive bids for certain improvement and construction projects, pursuant to provisions of the city charter.

The city is a freeholders' charter city organized under the Constitution and laws of this state. Until May 1965 the city operated under its 1915 charter, as amended, and since 1965 it has operated under its 1965 charter, as amended. Both charters contain "home rule" provisions (Cal. Const., art. XI, §§ 6, 8, subd. (j)), and provisions requiring that all public buildings and works costing more than a specified amount shall be done by contract and let to the lowest responsible bidder.[2] Neither charter contains any provisions relating to prevailing wages; however, the city council periodically enacts prevailing wage ordinances.

Plaintiff's assignors are among some 17 electricians employed by the city who work under the city electrician and have performed additions,

---

[2] *1915* charter, section 89: "All public buildings and works, when the expenditure therefor shall exceed one thousand dollars ($1,000.00), shall be done by contract and shall be let to the lowest responsible bidder, after advertising . . . ." (Stats. 1957, p. 4344.)

*1965* charter, section 1217: "Except as hereinafter otherwise provided, each purchase of supplies and materials the expenditure for which exceeds One Thousand Dollars ($1,000), each purchase of equipment the expenditure for which exceeds Two Thousand Dollars ($2,000) and each specific 'public works project,' hereinafter defined, the expenditure for which (excluding the cost of any materials which the City may have already lawfully acquired therefor) exceeds the amount which a general law City of the State of California may legally expend for a public project (as defined by State law) without a contract let to a lowest responsible bidder after notice, shall be contracted for and let to the lowest responsible bidder after notice; provided, however, that in no event shall the above apply to any specific 'public works project' the expenditure for which (excluding the cost of any materials which the City may have already lawfully acquired therefor) does not exceed Two Thousand Five Hundred Dollars ($2,500).

". . . . . . . . . . . . .

"For purposes of this Section, 'public works project' shall be deemed to mean and is hereby defined as a project for the construction, erection, improvement or demolition of any public building, street, bridge, drain, ditch, canal, dam, tunnel, sewer, water system, fire alarm system, electrical traffic control system, street lighting system, parking lot, park or playground; provided and excepting that 'public works project' shall not be deemed to mean or include the maintenance of any of said things, or any repairs incidental to such maintenance. . . . Also, the provisions of this Section shall not apply to any of the following: . . . (b) the purchase of any supplies, materials or equipment which can be obtained from only one vendor or manufacturer; . . . (f) work involving highly technical or professional skill where the peculiar technical or professional skill or ability of the person selected to do such work is an important factor in his selection; (g) expenditures deemed by the Council to be of urgent necessity for the preservation of life, health or property, provided the same are authorized by resolution of the Council adopted by the affirmative vote of at least five (5) members of the Council and containing a declaration of the facts constituting the urgency; and (h) situations where solicitation of bids would for any reason be an idle act." (Stats. 1965, pp. 5122, 5159.)

modification, maintenance and repair of city electrical facilities, buildings and equipment, including street lights, traffic signals, fire alarm boxes and systems, etc. The electricians are civil service employees of the city, and since 1958 have been paid monthly salaries on a year-round, full-time basis,[3] plus extra pay for overtime and holiday work, and plus various other benefits such as holidays, vacation and sick leave, health insurance and retirement benefits. In 1963 the work of the city electricians was approximately 40 percent new construction, but at the time of trial (1965-1966) the workload was only some 16 percent construction with mainte-nance taking up the other 84 percent.

Plaintiff's complaint focuses on four kinds of work[4] done by the city electricians between 1958 and 1966, assertedly in violation of the prevailing wage law and of the respective $1,000 and $2,500 project limits of the 1915 and the 1965 city charters. (Fn. 2, *ante.*) The trial court ruled, among other things, that both the four kinds of work and the setting and payment of salaries for the city's own year-round, full-time, civil service employees are purely municipal affairs to which, under the home rule provisions of article XI of the California Constitution, the prevailing wage provisions of Labor Code sections 1771 et seq., relied upon by plaintiff, cannot be applied; that in any event the prevailing wage law does not as a matter of statutory construction apply to the setting of such salaries. The court also found that the city at all times acted in the good faith belief that the prevailing wage provisions do not apply to the salaries paid to its own employees.

█ At all times since adoption of the Constitution in 1879, section 11 of article XI has specified that *"Any* county, *city,* town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Italics added.) In 1896 section 6 of article XI was amended to provide a limited amount of autonomy for freeholders' charter cities, and in 1914 sections 6 and 8 of article XI were amended to permit such cities, by appropriate charter amendments, to acquire autonomy with respect to all municipal affairs. A city which adopted such "home rule" amendments thereby gained exemption, with respect to its municipal affairs, from the "conflict with general laws" restrictions of section 11 of article XI.

As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of

---

[3]The pre-1958 earnings of the electricians are not in issue here, but were apparently based on a union scale.

[4]The four kinds of work: (1) fire alarm system; (2) overhead traffic signals; (3) IBM project; (4) miscellaneous electrical work at the municipal airport, in a park, and inside the city hall.

municipal regulation (the preemption doctrine). (*Pacific Tel. & Tel. Co.* v. *City & County of San Francisco* (1959) 51 Cal.2d 766, 768-769 [336 P.2d 514]; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 369-370 [125 P.2d 482, 147 A.L.R. 515].)

■ As is made clear in the leading case of *Pipoly* v. *Benson, supra,* local governments (whether chartered or not) do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature forbidden to legislate with respect to the local municipal affairs of a home rule municipality. Instead, in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other. (See also e.g. *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 856-866 [76 Cal.Rptr. 642, 452 P.2d 930]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681-684 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385];[5] *Chávez* v. *Sargent* (1959) 52 Cal.2d 162, 176-177 [339 P.2d 801]; *Agnew* v. *City of Los Angeles* (1958) 51 Cal.2d 1, 5 [330 P.2d 385]; *Wilson* v. *Beville* (1957) 47 Cal.2d 852, 856-861 [306 P.2d 789]; *Eastlick* v. *City of Los Angeles* (1947) 29 Cal.2d 661, 665-666 [177 P.2d 558, 170 A.L.R. 225]; *Southern Cal. Roads Co.* v. *McGuire* (1934) 2 Cal.2d 115, 123 [39 P.2d 412].)

■ If resolution of that question requires a determination as to whether the matter regulated is a state or a municipal affair, then, as declared in *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158], "Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern." In other words, "No exact definition of the term 'municipal affairs' can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case. The comprehensive nature of the power is, however, conceded in all the decisions. . . ." *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 147 [82 P.2d 434, 126 A.L.R. 838]; see also *City of Pasadena* v. *Charleville* (1932) 215 Cal. 384, 392 [5] [10 P.2d 745].) ■ Fur-

---

[5]That the statement appearing in *Abbott* (p. 681 [5] of 53 Cal.2d) that "A city has *no power* to legislate upon matters which are not of a local nature" was improvident is made clear by the later opinion of the same author, in *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, 856-866. (Italics added.)

ther, the "constititional concept of municipal affairs . . . changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state. [Citations.]" (*Pacific Tel. & Tel. Co.* v. *City & County of San Francisco, supra,* 51 Cal.2d 766, 771, 775-776; *Butterworth* v. *Boyd, supra.*)

██ In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see *Ex parte Daniels* (1920) 183 Cal. 636, 639-640 [192 P. 442, 21 A.L.R. 1172]), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.[6]

In the present case it clearly appears from the provisions of the prevailing wage law here involved that the Legislature did not intend that that law apply to the setting of the salaries of employees of a city, whether chartered or not.

██ Section 1771 of the Labor Code,[7] relied upon by plaintiff, is found in chapter 1 of part 7[8]. Part 7 is entitled "Public Works and Public

---

[6]Any statements to the contrary found in *In re Hubbard* (1964) 62 Cal.2d 119, 127-128 [41 Cal.Rptr. 393, 396 P.2d 809], were not only unnecessary to the decision there but are overruled if they be deemed authoritative. In *City of Redwood City* v. *Moore* (1965) 231 Cal.App.2d 563, 580-581 [42 Cal.Rptr. 72], the court was misled into contrary statements by overemphasis on the comment in *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 294, that the question as to whether a matter is of municipal or statewide concern "must be determined [by the courts] from the legislative purpose in each individual instance." As we have noted, the courts will give great weight to the legislative purpose and may be influenced by the same factors as was the Legislature; but the view expressed in *Moore, supra,* that the Legislature has "the power to change a municipal affair into a matter of statewide concern," is disapproved.

[7]Section 1771, in pertinent part: "Not less than the general prevailing rate of per diem wages for work of a similar character *in the locality in which the public work is performed* . . . shall be paid to *all workmen employed on public works* exclusive of maintenance work." (Italics added.)

[8]Subsequent section references herein are to the Labor Code, unless otherwise stated.

Agencies." Chapter 1 deals with "Public Works" and commences with section 1720. Section 1720 defines public works[9] as used in chapter 1, and section 1724 defines the expression "Locality in which public work is performed."[10] Inasmuch as section 1771 directs that the wage to be paid is that prevailing in the "locality in which the public work is performed," and section 1724 states that that expression encompasses only situations in which a contract to do public work has been awarded, it becomes at once apparent that section 1771 is by its own terms applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces.

■ Plaintiff also points to the clause in section 1773 directing that the "body awarding any contract for public work, *or otherwise undertaking any public work . . .*" shall ascertain the prevailing wage rate.[11] (Plaintiff's italics.) Again, however, as is clear from the entire provision, from which plaintiff has extracted a portion out of context, the direction to ascertain the prevailing wage not only is tied to the "locality" definition (see fn. 10, *ante*) and thus to the area in which the *contracted work* is to be performed, but the direction of section 1773 is that after such wage has been ascertained it shall be specified in the call for bids for the *contract* and in the *contract*. Accordingly, nothing found in section 1773 lends a scintilla of support to plaintiff's contention that the prevailing wage law was intended by the Legislature to apply to other than public work let out to contract. No useful purpose would be served by here undertaking to detail other sections of the prevailing wage law as set forth in chapter 1 of part 7 of the Labor Code, but it is appropriate to note that the entire tenor thereof discloses a legislative purpose to deal only with contracted public work, and not with work done by a municipality by force account. (See, e.g., §§ 1773.3, 1773.4, 1774, 1775, 1776.)

Additionally, the court so construed the law in *Beckwith* v. *County of Stanislaus* (1959) 175 Cal.App.2d 40, 48 [345 P.2d 363], with the declaration that "The prevailing wage and competitive bidding statutes

---

[9]For purposes of this opinion it may be assumed, without deciding, that the four kinds of work on which plaintiff's complaint focuses (see fn. 4, *ante*) fall within the section 1720 definition of public works.

[10]Section 1724: " 'Locality in which public work is performed' means the county in which the public work is done in cases in which *the contract is awarded* by the State, and means the limits of the political subdivision on whose behalf *the contract is awarded* in other cases." (Italics added.)

It is also noted that as used in chapter 1, "Political subdivision" is defined by section 1721 to include "any" city.

[11]The full sentence of section 1773 from which plaintiff has quoted reads in pertinent part: "The body awarding any contract for public work, or otherwise undertaking any public work, *shall ascertain* the general *prevailing* rate of per diem *wages in the locality in which the public work is to be performed* . . . *and* shall *specify in* the *call for bids for* the *contract*, . . . *and in the contract* itself, *what the general prevailing rate of . . . wages . . . in the locality is. . . ."* (Italics added.)

have no application to work undertaken by force account or day labor." Since *Beckwith* the statute has remained unchanged in any aspect material here, although amended in other respects.[12] ■ "Statutes are to be interpreted by assuming that the Legislature was aware of the existing judicial decisions. [Citation.] Moreover, failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Williams* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 618, 620 [51 Cal.Rptr. 277, 414 P.2d 405], and cases there cited; *Alter* v. *Michael* (1966) 64 Cal.2d 480, 482 [50 Cal. Rptr. 553, 413 P.2d 153]; *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 618 [7 Cal.Rptr. 129, 354 P.2d 657].)

■ With respect to the project limitations of $1,000 and $2,500 specified, respectively, in the 1915 and 1965 charters (fn. 2, *ante*), the trial court found and concluded, among other things, that the city has instituted and is following workable and effective procedures to guard against any violations of the requirements of section 1217 of the 1965 charter and intends in good faith to comply with such requirements. Plaintiff has thus shown no impropriety in the denial by the trial court of injunctive relief.

■ Other than plaintiff's claim that his assignors as city employees would have received higher earnings under the prevailing wage law, which we hold did not apply, plaintiff does not suggest that he made any showing which would controvert the trial court's ruling that neither plaintiff, his assignors, his union, nor members of his union have suffered any loss or damage by reason of the work done by the city's own employees. Accordingly, it is unnecessary in this opinion to attempt to weigh the four kinds of work as against the charter project limitations. Ample preventive remedies are available to taxpayers and citizens in the event of any attempt or threat to violate the public bidding requirements of the charter. We in no way condone any past evasion of those provisions, as public bidding serves many sound governmental purposes. However, in our view plaintiff's requested remedy by way of award for the benefit of his assignors is neither a proper remedy after the event nor a desirable preventive measure, and would fail to reach the real issue of possible violations of the charter.

The judgment is affirmed.

Traynor, C. J., McComb, J., and Draper, J. pro tem.,* concurred.

**PETERS, J.**—I disagree with the majority in three fundamental respects: (1) as to the effect to be given to the "home rule" provisions of article

---

[12]See Statutes 1963, chapter 467, page 1320, and chapter 1786, page 3592; Statutes 1965, chapter 283, page 1284; Statutes 1968, chapters 699, 880, 1411.

*Assigned by the Chairman of the Judicial Council.

XI of the California Constitution; (2) as to the proper construction of section 1720 et seq. of the Labor Code; and (3) as to the effect to be given to the violations of the city's own charter.

I

I cannot agree with the statements in the majority opinion that a city which adopted "home rule" amendments to its charter pursuant to sections 6 and 8 of article XI of the California Constitution "thereby gained exemption, with respect to its municipal affairs, from the 'conflict with general laws' restrictions of section 11 of article XI," that "in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other," and that in "exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see *Ex parte Daniels* (1920) 183 Cal. 636, 639-640 [192 P. 442, 21 A.L.R. 1172]), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern." (*Ante,* pp. 61-63; footnote omitted.)

I cannot agree that in cases where there is a conflict between local and state law or where there is a legislative intent to preempt the field, the problem is whether the subject matter is a municipal rather than state concern. The proper rule is that set forth in *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 292 [32 Cal.Rptr. 830, 384 P.2d 158], "general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, where the subject matter of the general law is of statewide concern." In other words, in cases of conflict and preemption, the inquiry ends once a statewide concern is found, and there is no need to weigh the state and municipal concerns or to determine which should predominate.

We applied the principle in *Professional Fire Fighters* where we recognized that the statutory provisions permitting unionization of firemen "may impinge" upon local control but held that since the statutory provisions were part of a scheme of legislation to create uniform fair labor practices throughout the state they were a matter of state concern. (60 Cal.2d at pp. 294-295.) Twenty-two cases were cited in the *Professional Fire Fighters* opinion "all dealing with various phases of municipal affairs held to be subject to general laws on the basis of statewide concern." (60 Cal.2d at pp. 293-294.)

The majority has impliedly overruled *Professional Fire Fighters* and these 22 cases. There is no justification for this grave departure from existing law. The rigid approach suggested by the majority, that matters are either a municipal affair or of state concern, ignores the basic realities of most situations. Logically, there are four categories. First is the situation where there are solely state concerns, and the subject matters of the municipal regulation and the state statute do not affect municipal affairs. Second is the situation where the subject matter of the municipal regulation and the state statute is a matter which involves both municipal and statewide concerns. Third is the situation where although the subject matter is one ordinarily subject to municipal regulations, such as relations with municipal employees, parts of the subject may also involve matters of statewide concern. Fourth is the situation where the subject matter solely involves municipal affairs and no matters of statewide concern are involved.

The first situation is reflected by *Wilson* v. *Beville,* 47 Cal.2d 852, 856-857 [306 P.2d 789], where this court held that claim requirements for the taking of property by eminent domain is not a municipal affair but is a matter of statewide concern that may be regulated only by the Legislature. (See *In re Hubbard,* 62 Cal.2d 119, 127 [41 Cal.Rptr. 393, 396 P.2d 809].) The court held invalid a city charter claim-filing provision insofar as it applied to actions in inverse condemnation.[1]

The second situation is reflected by *In re Hubbard, supra,* 62 Cal.2d 119, 127-128, where we recognized that the regulation of gambling is a matter of both local and statewide concern. We there held that in the absence of conflict with general law "chartered counties and cities have full power to legislate in regard to municipal affairs unless: (1) the subject matter has been so fully and completely covered by general law as to clearly indicate

---

[1]The majority does not disapprove *Wilson,* although it does disapprove a statement in *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385], that a "city has no power to legislate upon matters which are not of a local nature." (*Ante,* p. 62, fn. 5.) The next succeeding sentence of the *Abbott* opinion, which deals with matters which are a "mixed concern" of both municipalities and the state, makes it clear that the disapproved statement is concerned with matters solely of statewide concern. In my view, we should adhere to the statements of *Abbott* and *Hubbard,* and the holding of *Wilson.*

that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (62 Cal.2d at p. 128.) It should be pointed out that each of the three categories mentioned in the case is dependent upon a statewide concern, which because of legislative action or the subject matter, takes precedence over municipal affairs.

The third situation is reflected by *Professional Fire Fighters,* where the general subject in issue is a municipal affair but there are also matters of statewide concern. There it was recognized that the relations of a municipality with its employees in general is a matter of municipal concern but that the creation of uniform fair labor practices throughout the state is a matter of state concern and that regulations of a charter city in conflict with statutes governing labor relations of firemen were invalid. (60 Cal.2d at p. 289 et seq.)

The fourth situation, where the subject is solely municipal affairs so that enactments of the Legislature will be held invalid as applied to chartered cities and counties, is difficult to illustrate. The only case of this court cited by the majority, and the most recent one that I have found where it was held that legislation could not be validly held applicable to a chartered city or county is *City of Pasadena* v. *Charleville* (1932) 215 Cal. 384 [10 P.2d 745], and, as will appear hereinafter, that case should be disapproved. Furthermore, the two most recent cases discussing the problem of conflict between local and state law contain language indicating that the state law must always prevail. (*Galvan* v. *Superior Court,* 70 Cal.2d 851, 856 [76 Cal.Rptr. 642, 452 P.2d 930]; *Bellus* v. *City of Eureka,* 69 Cal.2d 336, 346 [71 Cal.Rptr. 135, 444 P.2d 711]; see also *Natural Milk etc. Assn.* v. *City etc. of San Francisco,* 20 Cal.2d 101, 110 [124 P.2d 25].)

I must confess that I find it somewhat incongruous that a chartered city may authorize conduct the state has prohibited, prohibit conduct that the state has authorized, engage in activities that the state has prohibited or refuse to comply with state law where the Legislature has clearly declared its intent that its statutes are to be applicable in and to the chartered city. Nevertheless, cases have continued to state that as to solely municipal affairs, ordinances of chartered cities will take precedence over conflicting statutes. (E.g., *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 291; *Pipoly* v. *Benson,* 20 Cal.2d 366, 369 [125 P.2d 482, 147 A.L.R. 515].)

If it be assumed that there are some matters so local in nature that the

Legislature's power to regulate will be limited to nonchartered cities and counties, it is apparent that such matters must be very rare. Equally rare are cases coming within the first situation where there are no local concerns so that even in the absence of state regulation chartered cities and counties may not act.

Most if not all matters upon which the state or chartered cities and counties legislate fall within the second and third categories where in the absence of conflicting state statutes or state occupation of the field chartered cities and counties may properly act. When the Legislature adopts a conflicting statute or occupies the field in such a case, the ordinance or the local regulation becomes invalid. This is the basis of *Professional Fire Fighters,* where we held that although ordinarily labor relations of municipal employees are a matter of local concern, uniform fair labor practices are a matter of state concern, and when the Legislature adopted a statute establishing uniform fair labor practices, a matter involving statewide concerns, the statute was controlling against conflicting municipal law. In other words, in the overwhelming majority of situations, if not all situations, as stated by Justice Molinari in *City of Redwood City* v. *Moore,* 231 Cal.App.2d 563, 580-581 [42 Cal.Rptr. 72], "the Legislature does have the power to change a municipal affair into a matter of statewide concern, and thus impinge upon local control, where it is the legislative purpose to deal with the particular subject matter under discussion on a statewide basis." Accordingly, I cannot agree with the majority that this language should be disapproved.

For the same reason I cannot agree with the majority's disapproval of *In re Hubbard, supra,* 62 Cal.2d 119, 127-128. Moreover, in disapproving *Hubbard,* the majority fails to deal with the specific problem dealt with there and leaves the law in an uncertain state as to an important problem which often arises in law enforcement. *Hubbard* held that the Long Beach ordinance prohibiting gambling was valid "except insofar as the ordinance may be applied to the 12 games and one class of activity prohibited by Penal Code section 330." (62 Cal.2d at p. 128.) Under *Hubbard* violations of the Penal Code section are prosecuted under state law, and other gambling infractions under the ordinance. In overruling *Hubbard* the majority does not tell us whether gambling is now to be considered a matter "predominately" of local or statewide concern. I do not understand the majority to repudiate the long-standing rule that where both state and local law prohibit the same conduct, there is a conflict and only one is valid (e.g., *In re Sic,* 73 Cal. 142, 146-149 [14 P. 405]; *Ex parte Daniels, supra,* 183 Cal. 636, 645; *Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 683), and prosecutors and judges will be required to guess whether conduct prohibited by both state and local gambling laws should be prosecuted under the state or the local law.

Rather than weigh whether local or statewide concerns should predominate, I would adhere to the rule of *Professional Fire Fighters,* that even in regard to matters which would otherwise be deemed to be strictly municipal affairs, general law prevails where the subject matter of the general law is of statewide concern. The prevailing wage law clearly reflects statewide concerns. The statutes before us deal with labor relations of persons employed on public works projects and the minimum wages to be paid them. *Professional Fire Fighters,* as we have seen, establishes that the subject of uniform fair labor practices is a proper subject of statewide concern, and it seems clear that minimum wages for employees is also such a matter. Although municipal employment is obviously a matter of local concern, the Legislature, in view of the statewide concerns, may properly adopt and make applicable to chartered cities and counties the statutes before us.

*City of Pasadena* v. *Charleville, supra,* 215 Cal. 384, 388-393, which dealt with the predecessors of the statutes before us, held that the state could not properly require a chartered city to provide for prevailing wages in its call for bids for a contract for a municipal improvement. The court suggested that general minimum wage laws applicable to public and private employees might be unconstitutional under *Adkins* v. *Children's Hospital,* 261 U.S. 525 [67 L.Ed. 785, 43 S.Ct. 394, 24 A.L.R. 1238]. The *Adkins* case has long been repudiated, and it is now recognized that minimum wages are a proper subject of state concern. (*West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379 [81 L.Ed. 703, 57 S.Ct. 578, 108 A.L.R. 1330].) *City of Pasadena* v. *Charleville, supra,* should also be overruled.

## II

In concluding that the prevailing wage law as set in chapter I of part 7 of division 2 of the Labor Code deals only with contracted public work and not with work done by force account, the majority largely ignores the first section of the chapter which makes clear that the prevailing wage law is not limited to contracted work but applies also to certain work done by force account. That section, 1720, provides:

"As used in this chapter 'public works' means: (a) Construction, alteration, demolition or repair work done under contract and paid for in whole or in part out of public funds, . . .

"(b) Work done for irrigation, utility, reclamation and improvement districts, and other districts of this type. 'Public work' shall not include the operation of the irrigation or drainage system of any irrigation or reclamation district, . . .

"(c) Street, sewer or other improvement work done under the direction and supervision or by the authority of any officer or public body of the State, or of any political subdivision or district thereof, whether such

political subdivision or district operates under a freeholder's charter or not."

It seems clear that improvement work let by contract would come under subdivision (a) of the section and that unless subdivision (c) is read to include within the definition of "public works" improvement work done by force account, subdivision (c) is meaningless. In addition subdivision (c) expressly provides that it applies to chartered cities and counties.

Section 1771 of the Labor Code requires the payment of the prevailing rate of wages to "all workmen employed on public works exclusive of maintenance work." Section 1771 provides: "Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, *shall be paid to all workmen employed on public works exclusive of maintenance work.*" (Italics added.) It seems clear to me that the scope of the prevailing wage law is set forth by the italicized matter and the definition of "public works" set forth in the first section of the chapter.

Likewise, section 1773 provides that the "body awarding any contract for public work, *or otherwise undertaking any public work,* shall ascertain the general prevailing rate of per diem wages in the locality in which the public work is to be performed. . . ." (Italics added.) The italicized words show that the prevailing wage law is not limited to situations where contracts are awarded.

The majority rely upon the phrase "locality in which public work is performed" appearing in sections 1771 and 1773 and defined in section 1724 as showing that the prevailing wage law is only applicable where contracts are let. Although it is true that section 1724 in defining the quoted term speaks of contracts, this, at most, can only create a conflict within the literal language of sections 1771 and 1773, and it is clear to me that the term "public works" is used in those sections to show the scope of the application of the prevailing wage law whereas the phrase relied upon by the majority is not intended to limit the scope of the law but only to establish the method of computation. In determining the legislative intent as to the scope of the statute, we should look at the language used by the Legislature in the statute to define the scope of the applicability of the prevailing wage law rather than a phrase which merely relates to the computation of the prevailing wage. When this is done, the definition of "public works" as set forth in the first section of the chapter requires the conclusion that the prevailing wage law applies to all workmen employed on public works exclusive of maintenance work whether or not the public works have been let by contract.

The majority also rely on the rule of statutory construction that statutes

are to be interpreted by assuming that the Legislature was aware of existing judicial decisions and that the failure to make changes in a statute in a particular respect, although making changes in other respects, is indicative of an intention to leave the law unchanged in that respect. This rule of construction in a proper case is entitled to great weight, but in the circumstances of this case it is entitled to little or no weight. The only judicial construction of the statutes is a statement made without citation of authority in *Beckwith* v. *County of Stanislaus,* 175 Cal.App.2d 40, 48 [345 P.2d 363], that the prevailing wage and competitive bidding statutes have no application to work undertaken by force account or day labor. The prevailing wage law was not directly involved in the case, and not only is there no citation to any authority for the statement but, more importantly, the opinion does not cite the prevailing wage statute or any section of the Labor Code. The headnotes of the official report of the case and of the West Publishing Company report (345 P.2d 363-364) make no mention whatsoever of the statement relied upon by the majority. The rule of construction relied upon by the majority is premised on the theory that the Legislature is aware of the judicial construction of the statute, and in the circumstances there is little reason to believe that the Legislature, when it was considering amending the statute in other respects, became aware of the statement in *Beckwith.*

In any event, any weight which the rule of construction relied upon by the majority might be entitled to in the present case is clearly counterbalanced because the Attorney General in two opinions reached a contrary construction of the prevailing wage law. In 1944 he expressly pointed out that construction of improvements by day labor was controlled by section 1771 of the Labor Code. (3 Ops.Cal.Atty.Gen. 399, 401.) In 1960, he pointed out that improvements by county employees, in accordance with the views expressed above, would not come under subdivision (a) of section 1720 which related solely to contracted work but would come under subdivision (c) of the section and that the prevailing wage law was applicable to such improvements. (35 Ops.Cal.Atty.Gen. 1, 2.) Unlike the opinion of the Court of Appeal relied upon by the majority, the opinions of the Attorney General both cited and analyzed the relevant code sections, and, if any weight is to be placed upon legislative inaction, it seems more reasonable to assume that the Legislature in refusing to act was more likely aware of the Attorney General's opinion than of the Court of Appeal opinion.

III

Finally, even if we assume that the prevailing wage law (Lab. Code, § 1720 et seq.), is applicable ordinarily only to contracts for improvements and is not ordinarily applicable to work done by force account, it nevertheless appears that plaintiff is entitled to recover in this action. Had

the city complied with its own charter, it would, under the undisputed facts, have been required to let a substantial portion of the work by contract, and the persons who performed that work, plaintiff's assignors, would have been entitled to payment of, at least, the prevailing wage. The city should not be permitted to profit from its own wrong in violating its charter, and the workingmen who worked on the improvements should not, because of the city's wrongful violation of its charter, be deprived of the compensation they are entitled to under statute.

I would reverse the judgment.

Mosk, J., and Sims, J. pro tem.,* concurred.

Appellant's petition for a rehearing was denied November 26, 1969. Draper, J. pro tem.,* and Sims, J. pro tem.,* sat in place of Tobriner, J., and Sullivan, J., who deemed themselves disqualified. Peters, J., Mosk, J., and Sims, J. pro tem.,* were of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.