TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-106 |
| of | : | |
| | : | June 6, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE DWIGHT HERR, COUNTY COUNSEL, COUNTY OF SANTA CRUZ, has requested an opinion on the following question:

Is a city which has previously been required to process its own parking citations now obligated to collect surcharges on its parking penalties for a county which has established a courthouse construction fund or a criminal justice facilities construction fund?

CONCLUSION

A city which has previously been required to process its own parking citations is now obligated to collect surcharges on its parking penalties for a county which has established a courthouse construction fund or a criminal justice facilities construction fund.

ANALYSIS

The question presented for resolution concerns whether cities which previously were required to process their own parking citations have a legal obligation under the new administrative procedures prescribed by the Legislature to collect surcharges for a county's courthouse construction fund or criminal justice facilities construction fund. We conclude that the new statutory scheme so directs.

94-106

The state mandated system for administering parking violations was substantially altered through legislation (Stats. 1992, ch. 1244) which became effective on July 1, 1993. Parking violations are now subject to civil administrative procedures and civil penalties (Veh. Code, §§ 40200-40230)[1] rather than treatment as criminal infractions. Under the new procedures, courts are no longer involved in the processing of parking violations until after all administrative reviews have been completed and the person files an appeal from the final administrative decision. (§§ 40200.4, 40230.)

The legislation allows the agency that has issued the parking citations to contract with a county, a private vendor, or any other city or county processing agency (other than the California Highway Patrol, California State Police, or other state law enforcement agency) within the county, for the processing of the citations prior to the filing of an appeal with the court. (§ 40200.5.)

The key provision of the legislative scheme for our purposes is subdivision (a) of section 40200.3. It states:

> "All parking penalties collected by the processing agency, which may be the issuing agency, including all administrative fees, process service fees, and fees and collection costs related to civil debt collection, shall be deposited to the account of the issuing agency, . . . except those sums payable to a county pursuant to Chapter 12 (commencing with section 76000) of Title 8 of the Government Code . . . ."

"Chapter 12" (Gov. Code, §§ 76000-76248)[2] concerns the distribution of fines under the old system of treating parking violations as criminal offenses. Accordingly, a part of the former system for distributing parking fines has been grafted onto the current civil procedures.

Pursuant to sections 76100 and 76101, counties are authorized to establish a courthouse construction fund and a criminal justice facilities construction fund.[3] Under the legislation, a county board of supervisors may authorize a surcharge of $2.50 upon each parking fine for deposit into these funds. Subdivision (b) of section 76000 provides:

> "In each authorized county, provided that the board of supervisors has adopted a resolution stating that the implementation of this subdivision is necessary to the county for the purposes authorized, with respect to each authorized fund established pursuant to Section 76100 or 76101, for every parking offense where a parking penalty, fine, or forfeiture is imposed, an added penalty of two dollars and fifty cents ($2.50) shall be included in the total penalty, fine, or forfeiture. Except

---

[1]All section references prior to footnote 2 are to the Vehicle Code.

[2]All section references hereafter are to the Government Code.

[3]"Criminal justice facilities" are defined as including "jails, women's centers, detention facilities, juvenile halls, and courtrooms." (§ 76101, subd. (b).)

as provided in subdivision (c), for each parking case collected in the courts of the county, the county treasurer shall place in each authorized fund two dollars and fifty cents ($2.50). These moneys shall be taken from fines and forfeitures deposited with the county treasurer prior to any division pursuant to Section 1462.3 or 1463.009 of the Penal Code. The judges of the county shall increase the bail schedule amounts as appropriate to reflect the added penalty provided for by this section. *In those cities, districts, or other issuing agencies which elect to accept parking penalties, and otherwise process parking violations pursuant to Article 3 (commencing with Section 40200) of Chapter 1 of Division 17 of the Vehicle Code, that city, district, or issuing agency shall observe the increased bail amounts as established by the court reflecting the added penalty provided for by this section. Each agency which elects to process parking violations shall pay to the county treasurer two dollars and fifty cents ($2.50) for each fund for each parking penalty collected on each violation which is not filed in court.* Those payments to the county treasurer shall be made monthly, and the county treasurer shall deposit all those sums in the authorized fund. No issuing agency shall be required to contribute revenues to any fund in excess of those revenues generated from the surcharges established in the resolution adopted pursuant to this chapter, except as otherwise agreed upon by the local governmental entities involved." (Emphasis added.)[4]

At the time the new statutory scheme was enacted, some cities were processing their own parking citations only because a court had previously directed them to do so pursuant to the court's authority under the former law. If these cities were required to process their own parking citations by court order under the prior system, does section 76000 apply to them now as "cities . . . which elect" to process their parking penalties?

We believe that regardless of their treatment under the prior system, such cities have an election to make concerning the processing of their parking citations under the new procedures. Their election is between (1) contracting with another government agency or private vendor for processing the parking penalties or (2) processing the parking penalties themselves. If a city elects not to have a private vendor or other processing agency administer its citations, it is electing to undertake those duties itself.

Moreover, when it elects to have some other entity process the parking citations on its behalf, the other entity must comply with the distribution requirements of section 76000. Vehicle Code section 40200.5 states:

"(a) . . . an issuing agency may elect to contract with the county, with a private vendor, or with any other city or county processing agency, other than the

[4]Until January 1, 1997, $1.00 of each $2.50 surcharge is to be transferred to the state's general fund; thereafter, it is to be transferred to the state's courthouse construction fund. (§ 76000, subd. (c).)

Department of California Highway Patrol, within the county, with the consent of that other entity, for the processing of notices of parking violations, prior to filing with the court pursuant to Section 40230.

      ".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(b)  Any contract entered pursuant to subdivision (a) shall provide for monthly distribution of amounts collected between the parties, except those amounts payable to a county pursuant to Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code . . . ."

Hence, whether it elects to be the processing agent (§ 40200.3, subd. (a)) or contracts with another entity (§ 40200.5, subd. (b)), the surcharges of section 76000 must be paid to the county.  "The processing agency shall deposit with the county treasurer all sums due to the county as the result of processing a parking violation."  (§ 40200.4, subd. (a).)

In so construing the language of section 76000 and Vehicle Code sections 40200-40230, we are mindful of several well established principles of statutory construction.  "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ."  (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.)  The words of a statute are to be given "their usual and ordinary meaning" (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501), "and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387).

The only remaining issue, then, is whether the provisions of section 76000 are applicable to charter cities.  Under the Constitution, charter cities are authorized to "make and enforce all ordinances and regulations in respect to municipal affairs."  (Cal. Const., art. XI, § 5, subd. (a).)  "City charters adopted pursuant to this Constitution . . . with respect to municipal affairs shall supersede all laws inconsistent therewith."  (*Ibid*.)

Do the provisions of section 76000 have the effect of forcing charter cities to allocate their resources for the collection of county revenues, thereby intruding upon their autonomy in the use of personnel and other matters over which they have plenary authority?  Or, is the imposition of surcharges to fund courthouse and criminal justice facilities construction a matter of "statewide concern" and thus not subject to the constitutional "municipal affairs" provision?  "As to matters which are of statewide concern . . . home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters. . . ."  (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61.)

In resolving this issue, we may apply the standard of review recently reaffirmed by the Supreme Court in *Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 399:

". . . [O]nce we conclude . . . that `the matter implicates a "municipal affair" and poses a genuine conflict with state law' [Citation], our inquiry under article XI, section 5, subdivision (a) of the Constitution proceeds in two discrete steps. First, we focus on whether the conflicting state law . . . qualifies as a matter of `statewide concern.' If the state statute does not qualify as a matter of statewide concern, the conflicting charter city measure (or practice) is a `municipal affair' and `"beyond the reach of legislative enactment."' [Citation.] If the state statute qualifies as a statewide concern, we next consider whether it is both (i) reasonably related to the resolution of that concern, and (ii) `narrowly tailored' to limit incursion into legitimate municipal interests. If it meets this final test, `then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5[, subdivision] (a), from addressing the statewide dimension by its own tailored enactments.' [Citation.]"

The administration of parking fines within a charter city implicates a municipal affair in that parking penalties have traditionally been set by the issuing agency and have accrued to its benefit. (See, e.g., Veh. Code, §§ 40200.3, 40203.5.) A charter city's refusal to collect and remit the surcharges of section 76000 would present a genuine conflict with state law.[5]

Does the imposition of parking surcharges to fund courthouse and criminal justice facilities construction qualify as a matter of statewide concern? We believe that it does. State law requires the board of supervisors in each county to "provide suitable rooms for holding the superior, municipal, and justice courts . . . ." (§ 68073.) As explained in *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 130:

". . . The determination of what is `suitable' as quarters for the courts necessarily includes the selection of a site as well as ascertainment of the extent and character of accommodations which a building or buildings must contain. Prescribing the policy and duty was the legislative act of the state; carrying out the policy by performing the duty is an administrative function delegated by the state to the local governing body, the board of supervisors. `The governing body of the [local political subdivision] . . . by its resolution did not make a law but thereby acted in an executive or administrative capacity as an instrumentality of the state to make operative the provisions of a state law already existing.' [Citations.]"

Undoubtedly, the construction (including funding) of courthouses and criminal justice facilities in each county is a matter of statewide concern. (See *Committee of Seven Thousand* v. *Superior Court, supra,* 45 Cal.3d at 505 [state law that permits city councils to impose development fees to fund construction of major thoroughfares deals with matters of statewide concern].) As stated in *Wilson* v. *City of San Bernardino* (1960) 186 Cal.App.2d 603, 611:

---

[5]A "conflict" may exist between state and local authority even though the charter city has not specifically legislated on that point. (*Johnson* v. *Bradley, supra*, 4 Cal.4th at 399, fn. 9.)

". . . [W]hen a general law of the state, adopted by the state Legislature, provides for a scheme of public improvement, the scope of which intrudes upon or transcends the boundary of one or several municipalities, together with unincorporated territory, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state."[6]

Finally, then, we must determine whether the provisions of section 76000 are reasonably related to the funding of courtroom and criminal justice facilities construction and narrowly tailored to limit incursion into legitimate municipal interests. Section 76000 creates no limitation on a charter city's ability to issue parking citations within its jurisdiction and only indirectly affects the fines it may charge. The obligations imposed are triggered solely by an act of the charter city itself, i.e., issuance of a parking citation. Moreover, there is a direct correlation between the issuance of parking citations and the use of court facilities. As previously indicated, under the new system of enforcing parking regulations through civil penalties, a contested parking citation requires court processing and review if appealed after a final administrative determination. (Veh. Code, § 40230.)

In light of the foregoing characteristics of the legislation in question, we find that it addresses a matter of statewide concern, is reasonably related to the resolution of such concern, and is narrowly tailored to limit incursion into legitimate municipal interests. Consequently, article XI, section 5(a) of the Constitution does not stand as an impediment to the application of section 76000 to charter cities.

We conclude that a city which has previously been required to process its own parking citations is now obligated to collect surcharges on its parking penalties for a county which has established a courthouse construction fund or a criminal justice facilities construction fund.

\* \* \* \* \*

---

[6]Moreover, neither the regulation of traffic nor the regulation of parking is a "municipal affair." (*County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 192-193; *Barajas* v. *City of Anaheim* (1993) 15 Cal.App.4th 1808, 1818, fn. 8; 73 Ops.Cal.Atty.Gen. 13, 15 (1990).)