TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>OPINION</td><td>:</td><td>No. 99-316</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>of</td><td>:</td><td>September 14, 1999</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>BILL LOCKYER</td><td>:</td><td></td></tr>
<tr><td>Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>ANTHONY S. Da VIGO</td><td>:</td><td></td></tr>
<tr><td>Deputy Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
</table>

THE HONORABLE TOM TORLAKSON, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1. Does the state statutory scheme specifying the maintenance of cost accounting records for public works construction by day's labor or force account prevail over inconsistent charter provisions adopted by a charter city?

2. Does the state statutory scheme specifying the maintenance of cost accounting records for public works construction by day's labor or force account prevail over inconsistent charter provisions adopted by a charter county?

CONCLUSIONS

1. The state statutory scheme specifying the maintenance of cost accounting records for public works construction by day's labor or force account prevails over inconsistent charter provisions adopted by a charter city.

2. The state statutory scheme specifying the maintenance of cost accounting records for public works construction by day's labor or force account prevails over inconsistent charter provisions adopted by a charter county.

ANALYSIS

The present inquiries concern the maintenance of cost accounting records by charter cities and charter counties for public works construction by "day's labor" or "force account." These terms refer to the labor force of a public agency acting as the employer rather than, for example, to the employees of an independent contractor who constructs a public works project that has been competitively bid. (See *Construction Industry Force Account Council* v. *Amador Water Agency* (1999) 71 Cal.App.4th 810, 814 fn. 3; 70 Ops.Cal.Atty.Gen. 92, 97 (1987); Webster's New Internat. Dict. (3rd ed. 1961) pp. 578, 887.)

The Legislature has enacted a statutory scheme (Gov. Code, §§ 4000-4007)[1] requiring the maintenance of cost accounting records for construction by day's labor or force account of specified public works. Section 4002 defines "public work" for purposes of this legislation as follows:

> "As used in this chapter, 'public work' means the construction of any bridge, road, street, highway, ditch, canal, dam, tunnel, excavation, building or structure within the State by day's labor or force account."

Exempted from this statutory scheme are "maintenance work, work occasioned by emergency, and work costing less than fifteen thousand dollars ($15,000)." (§ 4000.)

The Legislature has placed various record keeping responsibilities upon the "engineer" of the public works project. Section 4004 provides:

> "Prior to the commencement of the public work, the engineer shall

---

[1] Undesignated section references herein are to the Government Code.

prepare and file in his office either full, complete and accurate plans and specifications or a work authorization approved by the engineer describing the work to be performed, and an estimate of the cost thereof, except where other and adequate provision is made by law requiring the preparation and filing of such plans, specifications and estimates of cost by some other officer or in some other office."

Section 4003 states:

"The engineer directing, supervising or superintending the construction, or in charge of the engineering work for or in connection with public work shall keep an accurate account of the cost of the public work."

Section 4005 provides:

"Within 60 days from the completion of any public work, the engineer shall prepare and file in the office of the county clerk of the county in which the public work is performed, or if the engineer maintains an office in the county where the work is performed, then in such office, or if any reclamation, irrigation or other such district maintains an office, then in the office of his own district instead of the office of the county clerk, the following information in addition to that required by Section 4004:

"(a) Names of bidders with prices bid, if bids there be.

"(b) Changes in adopted or approved plans and specifications or a work
authorization describing the work to be performed.

"(c) That the work performed has or has not been done in accordance with such plans and specifications or work authorization.

"(d) The total cost of the work, segregated so as to show the actual cost of all labor, materials, equipment, engineering or architectural services, including the services of public employees in connection with such work, and other expense. The cost shown for equipment shall include rentals paid or, if the equipment is publicly owned, a reasonable amount for depreciation and the cost of repairs thereon while so used."

Section 4007 makes it a misdemeanor to wilfully violate the terms of these statutory

requirements:

> "Every engineer who wilfully violates any of the provisions of this chapter is guilty of a misdemeanor."

The project "engineer" subject to these requirements is defined in section 4001 as follows:

> "As used in this chapter, "engineer" means the Director of Transportation, the Director of Water Resources, the Director of General Services, or a deputy or other person authorized by any such officer, and every county engineer, county surveyor, county highway engineer, road commissioner, city engineer, commissioner of public works, superintendent of streets, harbor engineer, flood control engineer, the engineer of any board [or] commission of the state, the engineer of any board or commission of any city, and the engineer of any reclamation, irrigation, or other district or political subdivision or agency of the state."

Finally, section 4006 allows for public inspection of all records required to be maintained under this statutory scheme:

> "Plans, specifications, work authorizations describing work to be performed, and all other information referred to in this chapter are open to inspection and examination as a public record."

1.      Charter cities

The first inquiry concerns the application of the foregoing statutes to charter cities. We conclude that the requirements of sections 4000-4007 are applicable to charter cities.

California Constitution, article XI, section 5, subdivision (a), provides as follows:

> "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

Pursuant to this constitutional grant of authority, a charter city has supreme power over "municipal affairs," consisting essentially of matters of internal or local concern, free from state legislative intervention. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61; *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 146.)[2]

With respect to whether a specific matter constitutes a "municipal affair," no definitive definition may be given. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 5; *Bishop* v. *City of San Jose*, *supra*, 1 Cal.3d at 62.) In *Pacific Tel. & Tel. Co.* v. *City & Cty. of San Francisco* (1959) 51 Cal.2d 766, 771, the court observed:

> ". . . [T]he constitutional concept of municipal affairs is not a fixed or static quantity. It changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state."

In any event, ". . . the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs . . . ." (*Bishop* v. *City of San Jose*, *supra*, 1 Cal.3d at 63.)

In *California Fed. Savings & Loan* v. *City of Los Angeles*, *supra*, 54 Cal.3d 1, the Supreme Court identified four general steps to be taken in resolving an alleged municipal affairs conflict: (1) determine if there is a local concern, (2) identify the actual conflict, (3) find whether the matter is of statewide concern, and (4) consider whether the state statute is reasonably related to the resolution of the statewide concern. (*Id.*, at pp. 16-17.) Ultimately, the particular facts will determine whether "the state has a more substantial interest in the subject than the charter city." (*Id.*, at p. 18.)

Following this four-step approach, we find first that a city would have an obvious legitimate local interest in its cost accounting procedures undertaken in connection with local public works construction. Second, the question poses an actual conflict between the state statutory scheme and the local charter provisions.

As to the third issue of possible statewide interest, we note that the information to be recorded would involve more than cost accounting. Also required to be recorded are

_____

[2] Charter cities are, of course, bound by provisions of the California Constitution and the Constitution of the United States. (See *Wilson* v. *Los Angeles Bd. of Civil Service Commrs.* (1960) 54 Cal.2d 61, 65.)

"full, complete and accurate plans and specifications or a work authorization approved by the engineer describing the work to be performed . . . ." (§ 4004.) Upon completion of the public works project, the recorded information must include any changes in the adopted or approved plans and specifications or description of work to be performed, and a statement that the work performed has or has not been done in accordance with such plans and specifications or work authorization. (§ 4005, subds. (b), (c).)

Hence, the information to be recorded and disclosed relates not only to the costs to be paid by municipal taxpayers, a clearly local concern, but also to the design and structural integrity of the project, whether a road, bridge, tunnel, or other public structure. The latter dimension, involving the health and safety of all citizens who make use of the facility or structure, manifestly transcends purely local interests. "In general, 'municipal action which affects persons outside of the municipality becomes to that extent a matter which the state is empowered to prohibit or regulate . . . .' [Citations.]" (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 505.)

Additionally, the legislation requires the information to be "open to inspection and examination as a public record." (§ 4006.) The Legislature has expressly declared in a related context that ". . . access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250; see *Connell* v. *Superior Court* (1997) 56 Cal.App.4th 601, 610; *Rogers* v. *Superior Court* (1993) 19 Cal.App.4th 469, 475.) Requiring the records to be open to inspection allows for a comparison of public works construction projects throughout the state, clearly a statewide interest.

It is well established that certain aspects of an otherwise municipal affair, which implicate matters of statewide concern, may be subject to valid state regulation. (See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136-138; *Professional Fire Fighters, Inc.* v. *Los Angeles* (1963) 60 Cal.2d 276, 295.) We do not perceive the matter under consideration here, involving only the maintenance and public inspection of construction records, as constituting a significant interference with or impairment of a charter city's control over its public works construction procedures. We thus believe that sections 4000-4007 meet the fourth test of being reasonably related to the resolution of the statewide concern.

In answer to the first question, therefore, we conclude that the state laws specifying the maintenance of cost accounting records for public works construction by day's labor or force account (§§ 4000-4007) prevail over inconsistent charter provisions adopted by a charter city.

2.    Charter Counties

The second inquiry concerns the application of sections 4000-4007 to charter counties. We conclude that charter counties are subject to the requirements of sections 4000-4007.

California Constitution, article XI, section 3, subdivision (a), provides that a county may adopt a charter the provisions of which " . . . . shall supersede any existing charter and all laws inconsistent therewith." Section 4 of the same article provides:

"County charters shall provide for:

"(a) A governing body of 5 or more members . . . .

"(b) The compensation, terms, and removal of members of the governing body. . . .

"(c) An elected sheriff . . . other officers, their election or appointment, compensation, terms and removal.

"(d) The performance of functions required by statute.

"(e) The powers and duties of governing bodies and all other county officers . . . .

"(f) The fixing and regulation by governing bodies . . . of the appointment and number of . . . persons to be employed . . . .

"(g) Whenever any county has framed and adopted a charter . . . the general laws adopted by the Legislature . . . shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided.

"(h) Charter counties shall have all the powers that are provided by this Constitution or by statute for counties."

Unlike the constitutional provision relating to charter cities, containing a general reservation of local autonomy, a charter county possesses only those powers specifically enumerated in article XI, section 4. (*Cawdrey* v. *City of Redondo Beach* (1993) 15 Cal.App.4th 1212, 1221-1222.) Specifically, while charter cities are granted authority

to "'make and enforce all ordinances and regulations in respect to *municipal affairs* . . ,'" there is no corresponding grant of authority and autonomy over the "county affairs" of a charter county. (*Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1207.) Although a charter city may exercise any power not expressly forbidden by its charter, a charter county may exercise only those powers expressly granted to it. (*Cawdrey* v. *City of Redondo Beach*, *supra*, 15 Cal.App.4th at 1221-1222; 78 Ops.Cal.Atty.Gen. 355, 360-361 (1995).)

We do not find among the constitutional powers granted in article XI, section 4, any authority that would allow avoidance of the requirements of sections 4000-4007 respecting the matters under consideration. On the contrary, it is therein provided that a county charter shall provide for "[t]he performance of functions required by statute." (Cal. Const., art. XI, § 4, subd. (d).)

We thus conclude in answer to the second question that the state laws specifying the maintenance of cost accounting records for public works construction by day's labor or force account (§§ 4000-4007) prevail over inconsistent charter provisions adopted by a charter county.

\* \* \* \* \*